1                UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA

2

   **************************************************************

3   UNITED STATES OF AMERICA     Criminal No. 15-68

4   VS.                    January 21, 2016

5   NICANOR GONZALES         Section I
   GABRIEL RODRIGUEZ, SR.

6   HERMELINDA RODRIGUEZ

7   **************************************************************

8      **REPORTER'S OFFICIAL TRANSCRIPT OF THE RE-ARRAIGNMENT**

9        **BEFORE THE HONORABLE LANCE M. AFRICK**

10         **UNITED STATES DISTRICT JUDGE**

11   **************************************************************

12   APPEARANCES:

13

   For the Government:       MR. ANDRE JONES

14                     U.S. Attorney's Office
                     650 Poydras Street

15                     Suite 1600
                     New Orleans, LA  70130

16

17

   For the Defendant        MR. JASON ROGERS WILLIAMS

18   Mr. Nicanor Gonzales:     MR. GREGORY J. SAUZER
                     Jason Rogers

19                       Williams & Associates
                     607 St. Charles Avenue

20                     New Orleans, LA  70130

21

22   For the Defendant        MR. MARK THERING
   Mr. Gabriel Rodriguez, Sr.:  Thering Law

23                     1305 Prairie
                     Suite 300

24                     Houston, Texas 77002

25

```
1    For the Defendant           MR. STEPHEN C. ST. MARTIN
     Ms. Hermelinda Rodriguez:   Stephen C. St. Martin, P.C.
2                                PO Box 19948
                                 Houston, Texas 77224-1948
3


4
     Official Court Reporter:    Lanie M. Smith, RPR, CRR
5                                500 Poydras Street, B-275
                                 New Orleans, Louisiana 70130
6                                (504) 589-7782

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
             Proceedings reported using computerized stenotype;
25      transcript produced via computer-aided transcription.
```

<u>P R O C E E D I N G S</u>

(Call to order of the court.)

THE COURT:  All right.  We're in session.

All right.  Let's call the case.

THE COURTROOM MANAGER:  Criminal matter 2015-68, *United States of America versus Nicanor Gonzales, Hermelinda Rodriguez and Gabriel Rodriguez, Sr.*

This matter is set for re-arraignment, and we have an interpreter.

THE COURT:  All right.  Let's swear the interpreter, please.

(The oath was administered to the interpreter.)

THE COURTROOM MANAGER:  State your name.

THE INTERPRETER:  Lilliam Zayas.

THE COURT:  All right.  Who is Ms. Zayas interpreting for?  Which defendant?

MR. THERING:  That would be my client, Gabriel Rodriguez, Your Honor.

THE COURT:  And how about Mrs. Rodriguez?  Is there an interpreter necessary for her?

DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

THE COURT:  You speak English?

DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

THE COURT:  You do not wish the assistance of an interpreter?

1        DEFENDANT HERMELINDA RODRIGUEZ:  No, sir.

2        THE COURT:  All right.  Counsel, let's everybody make

3    their appearance, please.

4        MR. JONES:  Good afternoon, Your Honor.  Andre Jones on

5    behalf of the United States.

6        MR. WILLIAMS:  Good afternoon, Judge.  Jason Williams

7    and Greg Sauzer on behalf of Mr. Gonzales.

8        MR. ST. MARTIN:  Good afternoon.  Stephen St. Martin

9    for Ms. Hermelinda Rodriguez.

10        MR. THERING:  Good afternoon.  Mark Thering for Gabriel

11    Rodriguez.

12        THE COURT:  Sorry about starting a little late today.

13    We had an evidentiary hearing that we had to finish up.

14            And with respect to the charge against

15    Mr. Gonzales, I understand he is pleading guilty to the cocaine

16    and not the heroin; is that correct?

17        MR. JONES:  That is correct, Your Honor.

18        THE COURT:  And Mr. Rodriguez is pleading guilty to

19    both; is that right?

20        MR. JONES:  That's correct.

21        THE COURT:  Now, how do you pronounce -- is it Nicanor

22    Gonzales?

23        DEFENDANT GONZALES:  Yes, sir.  Nicanor.

24        THE COURT:  Nicanor?

25        DEFENDANT GONZALES:  Yes, sir.

1        THE COURT:  Nicanor Gonzales; Hermelinda Rodriguez and

2   Gabriel Rodriguez, Sr., you have a right to have an attorney at

3   every stage of the proceedings.  And although you have an

4   attorney at this time, if it later appears at any stage of the

5   proceedings that you can't afford an attorney, one will be

6   appointed to represent you.

7            Please swear all three defendants.

8        (Whereupon, the defendants were duly sworn.)

9        THE COURT:  Counsel, any time you want to sit down,

10  that's fine with me.  I need the clients obviously to stand up

11  because we have a lengthy re-arraignment to go through to get

12  this done.  All right?

13          All right.  Mr. and Mrs. Rodriguez, I'm advised

14  you wish to enter pleas of guilty; is that correct?

15       DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

16       DEFENDANT HERMELINDA RODRIGUEZ:  Correct.

17       THE COURT:  And, Mr. Gonzales, I'm advised you wish to

18  change your plea; is that correct?

19       DEFENDANT GONZALES:  Yes, sir, Your Honor.

20       THE COURT:  Before accepting your pleas of guilty, I'm

21  required to ask certain questions.  If any of you don't

22  understand a question, please ask me to explain it to you.  You

23  may confer with your attorney on any question if you find it

24  necessary to do so.  I also want to advise each of you that any

25  answers you give in this proceeding that are on the record and

1    in the presence of your counsel, because they are under oath,

2    may later be used against you in a prosecution for perjury or

3    making a false statement.

4              All right.  Let's start with Mr. Gonzales.

5    Mr. Gonzales, what is your age?

6              DEFENDANT GONZALES:  48, sir.

7              THE COURT:  Mrs. Rodriguez, what is your age?

8              DEFENDANT HERMELINDA RODRIGUEZ:  57, Your Honor.

9              THE COURT:  And how about you, Mr. Rodriguez?

10             DEFENDANT GABRIEL RODRIGUEZ:  60.

11             THE COURT:  Do each of you read?

12             DEFENDANT GONZALES:  Yes, sir.

13             DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

14             DEFENDANT GABRIEL RODRIGUEZ:  Yes.

15             THE COURT:  Remember, everybody has to speak up because

16   everything is being taken down by the court reporter.

17             How much education have you had, Mr. Gonzales?

18             DEFENDANT GONZALES:  GED, sir.

19             THE COURT:  I'm sorry?

20             DEFENDANT GONZALES:  GED.  High school diploma.

21             THE COURT:  How about you, Mrs. Rodriguez?

22             DEFENDANT HERMELINDA RODRIGUEZ:  Two years of college,

23   Your Honor.

24             THE COURT:  How about you, Mr. Rodriguez?

25             DEFENDANT GABRIEL RODRIGUEZ:  6th.

1          THE COURT:  Are you or have you recently been under the

2     care of a doctor or a psychiatrist?  Mr. Gonzales?

3          DEFENDANT GONZALES:  No, sir.

4          THE COURT:  Mrs. Rodriguez?

5          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

6          THE COURT:  Mr. Rodriguez?

7          DEFENDANT GABRIEL RODRIGUEZ:  No psychiatric care, but

8     I have received medical care.

9          THE COURT:  All right.  What kind of medical care have

10     you received?

11          DEFENDANT GABRIEL RODRIGUEZ:  I have received extensive

12     treatment for heart issues.  I have three stents in my

13     arteries.  I also have high blood -- Excuse me.  I'm also a

14     diabetic, which I have been for about 20 years.

15          THE COURT:  Are they treating you for all those

16     diseases at the jail?

17          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.  Yes, sir.  I

18     also have -- and I also have been receiving treatment for

19     blockage to seven veins.

20          THE COURT:  Anything else, sir?

21          DEFENDANT GABRIEL RODRIGUEZ:  And high blood pressure.

22          THE COURT:  Okay.

23          DEFENDANT GABRIEL RODRIGUEZ:  And that's all.

24          THE COURT:  Have you taken any narcotic drugs, medicine

25     or pills or consumed any alcohol in the past 24 hours?

1                    Mr. Gonzales?

2           DEFENDANT GONZALES:  No, sir, Your Honor.

3           THE COURT:  Mrs. Rodriguez?

4           DEFENDANT HERMELINDA RODRIGUEZ:  No, sir, Your Honor.

5           THE COURT:  Mr. Rodriguez?

6           DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

7           THE COURT:  With all your ailments, you're not taking

8     any medicine?

9           DEFENDANT GABRIEL RODRIGUEZ:  I have been taking a lot

10    of medication, but they're not narcotics.

11          THE COURT:  Okay.  All right.  Have any of you been

12    treated for narcotics addiction?

13          DEFENDANT GONZALES:  No, sir.

14          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

15          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

16          THE COURT:  Counsel, any doubt as to your client's

17    competence to plead?

18          MR. WILLIAMS:  No, Your Honor.

19          MR. ST. MARTIN:  No, Your Honor.

20          MR. THERING:  No, Your Honor.

21          THE COURT:  I find them competent to enter into these

22    proceedings.

23               Now, Mr. Gonzales, you're being charged by a

24    second superseding indictment.  Have you received a copy of the

25    second superseding indictment?

1          DEFENDANT GONZALES:  That is correct, sir.

2          THE COURT:  Mr. and Mrs. Rodriguez, you're each being

3    charged by a superseding bill of information.  Have each of you

4    received a copy of your respective superseding bills of

5    information?

6          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

7          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

8          THE COURT:  And has Mr. Rodriguez's superseding bill of

9    information been read to him in Spanish by the interpreter?

10          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

11          THE COURT:  Mr. and Mrs. Rodriguez, I've been advised

12    that you have each waived your right to be charged by an

13    indictment.  You have a constitutional right to be charged by

14    an indictment of a grand jury, but you can waive that right and

15    consent to be charged by a superseding bill of information

16    filed by the U.S. Attorney.

17               Instead of an indictment, the charge against each

18    of you has been brought by the U.S. Attorney.  Unless you waive

19    indictment, you may not be charged with a felony offense unless

20    the grand jury finds by return of an indictment that there's

21    probable cause to believe a crime has been committed and that

22    you have committed it.

23               If you do not waive indictment, the government

24    may present the case to the grand jury and request the grand

25    jury indict you.  A grand jury is composed of at least 16 and

1  not more than 23 persons and at least 12 grand jurors must find

2  there's probable cause to believe you've committed the crime

3  with which you're charged before you may be indicted.  The

4  grand jury may or may not indict you.

5           If you waive indictment by the grand jury, the

6  case proceeds against you on the U.S. Attorney's superseding

7  bills of information just as though you were each indicted.

8           Now, Mr. and Mrs. Rodriguez, have you each

9  discussed the matter of waiving the right to indictment by the

10 grand jury with your attorney?

11      DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

12      DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

13      THE COURT:  Do you each understand your right to be

14 charge by indictment by a grand jury that I just explained to

15 you?

16      DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir, Your Honor.

17      DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18      THE COURT:  Have any threats or promises been made to

19 either of you to get you to waive your right to an indictment?

20      DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

21      DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

22      THE COURT:  Counsel, do either one of you know of any

23 reason why your client should not waive indictment?

24      MR. ST. MARTIN:  There are no reasons, Your Honor.

25      MR. THERING:  No, Your Honor.

1          THE COURT:  Is there a form, by the way, that's been

2     filled out?

3          MR. ST. MARTIN:  Yes, Your Honor.

4          THE COURT:  Has that form been read to each of them by

5     the interpreter in Spanish?

6          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

7          MR. ST. MARTIN:  I read it in English, Your Honor.

8          THE COURT:  I'm sorry.  To Mr. Rodriguez in Spanish.

9               Let me see the forms, please.

10               Mr. and Mrs. Rodriguez, with the knowledge of

11     your right to be charged by indictment returned by the grand

12     jury, are each of you willing to waive your right to

13     indictment?

14          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

15          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

16          THE COURT:  Are these your signatures on these

17     documents?

18          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

19          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

20          THE COURT:  Are those counsels' signatures on those

21     waivers of indictment?

22          MR. THERING:  They are, Your Honor.

23          MR. ST. MARTIN:  It is, Your Honor.

24          THE COURT:  Do each of you understand what was stated

25     on this waiver of indictment?

1    DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

2    DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

3    THE COURT:  Would either one of you like any further

4    explanation by your counsel or by the Court?

5    DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

6    DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

7    THE COURT:  Has anybody threatened you into entering

8    into the waiver?

9    DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

10   DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

11   THE COURT:  Do you do so voluntarily and of your own

12   free will?

13   DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

14   DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

15   THE COURT:  All right.  I find that they have both

16   knowingly and voluntarily waived their right to an indictment.

17   What's today's date?

18   THE COURTROOM MANAGER:  The 21st.

19   THE COURT:  Now, Mr. Gonzales, you've read the second

20   superseding indictment, correct?

21   DEFENDANT GONZALES:  Yes, sir, Your Honor.

22   THE COURT:  Do you want me to read the second

23   superseding indictment to you?

24   DEFENDANT GONZALES:  That's not necessary, sir.

25   THE COURT:  All right.  Now, Mr. and Mrs. Rodriguez,

1   you've each read your respective superseding bills of

2   information or in Mr. Rodriguez's case, had it read to you; is

3   that correct?

4        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

5        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

6        THE COURT:  Prior to entering your pleas, do either one

7   of you want me to read the superseding bills of information to

8   you?

9        DEFENDANT HERMELINDA RODRIGUEZ:  It's not necessary,

10  Your Honor.

11       DEFENDANT GABRIEL RODRIGUEZ:  It is not necessary.

12       THE COURT:  Mr. Gonzales, how do you wish to plead?

13       DEFENDANT GONZALES:  I plead guilty, sir.

14       THE COURT:  Mrs. Rodriguez?

15       DEFENDANT HERMELINDA RODRIGUEZ:  Guilty, Your Honor.

16       THE COURT:  How about you, Mr. Rodriguez?

17       DEFENDANT GABRIEL RODRIGUEZ:  Guilty.

18       THE COURT:  Now, Mr. Gonzales, you're charged in

19  Count 1 of the one-count Second Superseding Indictment, which

20  states in substance that beginning on a date unknown and

21  continuing to March 19th, 2015, in this district and elsewhere,

22  you and others knowingly and intentionally conspired with each

23  other to distribute and to possess with intent to distribute

24  five kilograms or more or cocaine hydrochloride, which is a

25  Schedule II drug controlled substance and one kilogram or more

1    or heroin, a Schedule I drug controlled substance in violation

2    of the United States Code.

3              And Mr. Rodriguez --

4              (Addressing the Interpreter) Are you all right?

5    THE INTERPRETER:  I'm sorry, Your Honor.

6    THE COURT:  Are you okay?

7    THE INTERPRETER:  Just getting a little water.

8    THE COURT:  Do you need a break?

9    THE INTERPRETER:  Yes, I am.

10   THE COURT:  Do you need a break?

11   THE INTERPRETER:  No, no, I'm good.

12   THE COURT:  Mr. Rodriguez, you're charged in Count 1 of

13   the one-count Superseding Bill of Information, which states in

14   substance that beginning on a date unknown and continuing to

15   June 23rd, 2015, in this district and elsewhere, that you and

16   others knowingly and intentionally conspired with each other to

17   distribute and to possess with intent to distribute five

18   kilograms or more or cocaine hydrochloride, a Schedule II drug

19   controlled substance, and one kilogram or more of heroin, a

20   Schedule I drug controlled substance in violation of the

21   United States Code.

22              Now, Mrs. Rodriguez, you're charged in Count 1 of

23   a separate one-count Superseding Bill of Information, that

24   beginning on or about May 13th, 2015, and continuing to on or

25   about June 23rd, 2015, in this district and elsewhere, you,

1   having knowledge of the actual commission of a felony -- that

2   is, conspiracy to distribute five kilograms or more or cocaine

3   hydrochloride and one kilogram or more of heroin in violation

4   of the U.S. Code -- did conceal the same by acting as a decoy

5   by riding with your husband who was trafficking drug proceeds

6   from North Carolina through this district to Texas in a vehicle

7   with a hidden compartment and you did not as soon as possible

8   make known the same to some judge or other person in civil or

9   military authority under the U.S. and that you knowingly

10  concealed from law enforcement the whereabouts of

11  Gabriel Rodriguez, Sr., by telling them he was in a hospital in

12  Mexico when, in fact, he was in Santa Fe, Texas; in violation

13  of the U.S. code.

14          Both the Second Superseding Indictment to which

15  Mr. Gonzales intends to plead and the Superseding Bill of

16  Information to which Mr. Rodriguez intends to plead contain

17  notices of drug forfeiture as a result of the offenses alleged

18  in Count 1 of each document.

19          I'll now explain the elements of the offenses.

20          You'll each notice that from time to time the

21  Second Superseding Indictment and the Superseding Bills of

22  Information charge that a statute was violated by various acts,

23  which are joined by the conjunctive word "and."

24          Count 1 of the Second Superseding Indictment and

25  Count 1 of Mr. Rodriguez's Superseding Bill of Information, for

1   example, charge that a statute was violated with respect to two

2   different controlled substances; and the charged conspiracy

3   refers to both distribution "and" possession with intent to

4   distribute.

5           A particular defendant may be found guilty if the

6   evidence establishes beyond a reasonable doubt that the

7   defendant conspired to distribute and/or conspired to possess

8   with intent to distribute either cocaine hydrochloride or

9   heroin.  In other words, when reading the Second Superseding

10  Indictment or the Superseding Bills of Information, you should

11  each keep in mind that the word "and" really means "or."

12          Now, let's with the drug conspiracy charge.  With

13  respect to Count 1 of the Second Superseding Indictment and

14  Count 1 of Mr. Rodriguez's Superseding Bill of Information,

15  Title 21, U.S. Code, Section 846, makes it a crime for anyone

16  to conspire with someone else to commit a violation of certain

17  controlled substances laws of the U.S.

18          In this case, Mr. Gonzales and Mr. Rodriguez are

19  each charged in their respective documents with conspiring to

20  distribute and/or to possess with intent to distribute five

21  kilograms or more of cocaine hydrochloride and/or one kilogram

22  or more of heroin, though I do recognize that Mr. Gonzales is

23  pleading to the cocaine and not the heroin.

24          A "conspiracy" is an agreement between two or

25  more persons to join together to accomplish some unlawful

1    purpose.  It's a kind of partnership in crime in which each

2    member becomes the agent of every other member.

3                 For a defendant to be found guilty of conspiracy

4    as charged in Count 1 of the Second Superseding Indictment and

5    in Count 1 of Mr. Rodriguez's Superseding Bill of Information,

6    the government must prove each of the following elements beyond

7    a reasonable doubt:

8                 First, that the defendant and one or persons,

9    directly or indirectly, reached an agreement to distribute

10   and/or to possess with intent to distribute five kilograms or

11   more of cocaine hydrochloride and/or one kilogram or more of

12   heroin;

13                Second, that the defendant knew of the unlawful

14   purpose of the agreement;

15                Third, that the defendant joined in the agreement

16   willfully; that is, with the intent to further its unlawful

17   purpose;

18                Fourth, that the overall scope of the conspiracy

19   involved at least five kilograms of cocaine hydrochloride

20   and/or one kilogram of heroin;

21                And, fifth, that the defendant knew or reasonably

22   should have known that the scope of the conspiracy involved at

23   least five kilograms of cocaine hydrochloride and/or one

24   kilogram of heroin.

25                A defendant may become a member of a conspiracy

1    without knowing all the details of the unlawful scheme or the

2    identities of all the other alleged conspirators.  If the

3    defendant understood the unlawful nature of a plan or scheme

4    and knowingly and intentionally joined in that plan or scheme

5    on one occasion, that is sufficient to convict the defendant of

6    conspiracy even though defendant did not participate before and

7    even though defendant played only a minor part.

8            The government need not prove that the alleged

9    co-conspirators entered into any formal agreement, nor that

10   they directly stated between themselves all the details of the

11   scheme.  Similarly the government need not prove that all of

12   the details of the scheme alleged in the Second Superseding

13   Indictment or in the Superseding Bill of Information were

14   actually agreed upon or carried out.  Nor must it prove that

15   all the persons alleged to have been members of the conspiracy

16   were such or that the alleged conspirators actually succeeded

17   in accomplishing their unlawful objectives.

18           The defendant's mere presence at the scene of an

19   event, even with knowledge a crime was being committed, or the

20   mere fact that certain persons may have associated with each

21   other and may have assembled together and discussed common aims

22   and interests does not necessarily establish proof of the

23   existence of a conspiracy.  A person who has no knowledge of a

24   conspiracy, but who happens to act in way that advance some

25   purpose of a conspiracy, does not become a conspirator.

1          As I stated, the object of the conspiracy counts,

2     which are Count 1 of the Second Superseding Indictment and

3     Count 1 of Mr. Rodriguez's Superseding Bill of Information, are

4     to distribute and/or to possess with intent to distribute five

5     kilograms or more of cocaine hydrochloride and/or one kilogram

6     or more of heroin.  For a defendant to be found guilty of

7     Count 1 of either document, the government does not need to

8     prove the defendant is guilty of both objects of the

9     conspiracy, but that he's guilty of conspiracy to commit one or

10    more of the objects of the conspiracy.

11          I'll now explain the elements of distribution

12    and/or possession with the intent to distribute a controlled

13    substance.  Now, let's talk about the distribution.

14          Title 21, U.S. Code, Section 841(a)(1), makes it

15    a crime for anyone to knowingly or intentionally distribute a

16    controlled substance.  Cocaine hydrochloride and heroin are

17    controlled substances within the meaning of the law.

18          For a defendant to be found guilty of

19    distributing a controlled substance, the government must prove

20    each of the follow elements beyond a reasonable doubt:

21          First, that the defendant knowingly or

22    intentionally distributed a controlled substance; in this case,

23    cocaine hydrochloride and/or heroin;

24          Second, that the substance was, in fact, cocaine

25    hydrochloride and/or heroin;

1           And, third, that the quantity of cocaine

2    hydrochloride was five kilograms or more and/or that the

3    quantity of heroin was one kilogram or more.

4           To "distribute" means to deliver or transfer

5    possession or control of something from one person to another.

6    The term "to distribute" includes the sale of something by one

7    person to another.

8           Now, one of the other objects is possession with

9    intent to distribute.

10          Title 21, U.S. Code, Section 841(a)(1) makes it a

11   crime for anyone to knowingly or intentionally possess a

12   controlled substance with the intent to distribute it.  Cocaine

13   hydrochloride and heroin are controlled substances within the

14   meaning of that law.

15          For a defendant to be found guilty of possession

16   with the intent to distribute cocaine hydrochloride and/or

17   heroin, the government must prove each of the following

18   elements beyond a reasonable doubt:

19          First, that the defendant knowingly possessed the

20   controlled substance; in this case, cocaine hydrochloride

21   and/or heroin;

22          Second, that the substance was, in fact, cocaine

23   hydrochloride and/or heroin;

24          Third, the defendant possessed one or both

25   substances with the intent to distribute them;

1          And, fourth, that the quantity was five kilograms

2    or more of cocaine hydrochloride and/or one kilogram or more of

3    heroin.

4          To "possess with intent to distribute" simply

5    means to possess with intent to deliver or transfer possession

6    of a controlled substance to another person with or without any

7    financial interest in the transaction.

8          Possession may be of two kinds:  Actual

9    possession and constructive possession.  A person who knowingly

10   has direct physical control over a thing at a given time is in

11   actual possession of it.

12         A person who, although not in actual possession,

13   knowingly has both the power and the intention, at a given

14   time, to exercise dominion or control over a thing, either

15   directly or through another person or persons, is then in

16   constructive possession of it.

17         Possession may be sole or joint.  If one person

18   alone has actual or constructive possession of a thing,

19   possession is sole.  If two or more persons share actual or

20   constructive possession of a thing, possession is joint.

21         The government must prove beyond a reasonable

22   doubt that a defendant had actual or constructive possession,

23   either alone or jointly with others.

24         Now, with respect to Count 1 of Mrs. Rodriguez's

25   Superseding Bill of Information, Title 18, U.S. Code,

1    Section 4, makes it a crime for anyone to conceal from the

2    authorities the fact that a federal felony has been committed.

3    Conspiracy to distribute cocaine hydrochloride and heroin is a

4    federal felony, as is conspiracy to possess with intent to

5    distribute cocaine hydrochloride and heroin.

6              For a defendant to be found guilty of this crime,

7    the government must prove each of the following elements beyond

8    a reasonable doubt:

9              First, that a federal felony was committed, as

10   charged in Count 1 of Mrs. Rodriguez's Superseding Bill of

11   Information.  The elements of conspiracy to distribute cocaine

12   hydrochloride and heroin were previously explained in the

13   context of Count 1 of the Superseding Indictment and Count 1 of

14   Mr. Rodriguez's Superseding Bill of Information;

15             Second, that the defendant had knowledge of the

16   commission of the felony;

17             Third, that the defendant failed to notify an

18   authority as soon as possible.  An "authority" includes a

19   federal judge or some other federal, civil or military

20   authority, such as a federal grand jury, secret service agent,

21   or FBI agent;

22             And, fourth, the defendant did an affirmative

23   act, as charged, to conceal the crime.

24             Mere failure to report a felony is not a crime.

25   The defendant must commit some affirmative act designed to

1    conceal the fact that a federal felony has been committed.

2              Now, Mr. Gonzales and Mr. and Mrs. Rodriguez, do

3    each of you understand the charge against you and the elements

4    of the offense?

5              DEFENDANT GONZALES:  Yes, sir, Your Honor.

6              DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

7              DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

8              THE COURT:  All right.  Now, Mr. Gonzales and

9    Mr. Rodriguez, the maximum possible sentence that could be

10   imposed on either of you in the event of a conviction with

11   respect to Count 1 of the Second Superseding Indictment and

12   Count 1 of the Superseding Bill of Information, either upon a

13   plea of guilty or after a trial at which you're found guilty,

14   is a mandatory minimum term of imprisonment of at least

15   10 years, up to a maximum term of imprisonment of life; a fine

16   of not more than $10 million or the greater of twice the gross

17   gain to you, the defendant, or twice the gross loss to any

18   person; and a minimum term of supervised release of at least

19   five years and a maximum term of supervised release of life.

20             Now, Mrs. Rodriguez, the maximum possible

21   sentence that could be imposed on you in the event of a

22   conviction with respect to Count 1 of the Superseding Bill of

23   Information, either upon a plea of guilty or after a trial at

24   which you are found guilty, is a maximum term of imprisonment

25   of three years; a fine of not more than $250,000 or the greater

1   of twice the gross gain to you, the defendant, or twice the

2   gross loss to any person under U.S. Code; and a maximum term of

3   supervised release of one year.

4                Supervised release is a period following release

5   from prison during which your conduct is monitored by the Court

6   or the Court's designee.  If you're found to have violated a

7   condition of supervised release or you're found to have been in

8   possession of a controlled substance, the Court could revoke

9   the supervised release and order you to serve in prison all or

10  part of the term of supervised release without credit for any

11  time served on post-release supervision.

12               The Court is also required to impose on each of

13  you in the event of a conviction, either upon a plea of guilty

14  or after a trial at which you're found guilty, a special

15  assessment in the amount of $100.

16               If convicted, any defendant who is not a

17  U.S. citizen may be removed from the U.S., denied citizenship,

18  and denied admission to the U.S. in the future.

19               Are each of you U.S. citizens?

20           DEFENDANT GONZALES:  Yes, Your Honor.

21           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

22           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

23           THE COURT:  As part of your plea agreements, you've

24  agreed to make restitution pursuant to the U.S. Code.  Such

25  restitution shall be nondischargeable in bankruptcy

1    proceedings.  The extent of restitution ordered by the Court

2    may include restitution arising from all relevant conduct and

3    it's not limited to that arising from the offense of conviction

4    alone.

5              Now, Mr. Gonzales and Mr. Rodriguez, your

6    respective charging documents also contain notices of intent to

7    seek forfeiture of your property.  By pleading guilty, you're

8    each admitting to facts that may be used to support a

9    forfeiture judgment against you.

10             Mr. Gonzales and Mr. and Mrs. Rodriguez, do each

11   of you fully understand if I accept your pleas of guilty, I

12   could impose the maximum possible sentences I've just related

13   to you?

14             DEFENDANT GONZALES:  Yes, sir, Your Honor.

15             DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

16             DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

17             THE COURT:  Mr. Gonzales and Mr. Rodriguez, has your

18   counsel explained to each of you the 10-year mandatory minimum

19   with respect to Count 1 of the Second Superseding Indictment

20   and Count 1 of Mr. Rodriguez's Superseding Bill of Information?

21             DEFENDANT GONZALES:  Yes, sir, Your Honor.

22             DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

23             THE COURT:  Mr. Gonzales and Mr. and Mrs. Rodriguez,

24   have the sentencing guidelines applicable to your case been

25   explained to each of you by your counsel?

1        DEFENDANT GONZALES:  Yes, sir, Your Honor.

2        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

3        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

4        THE COURT:  Do you each understand that although the

5   Court has an obligation to calculate the applicable sentencing

6   guideline range and consider that range, the guidelines are

7   advisory and not binding on the Court?

8        DEFENDANT GONZALES:  Yes, sir, Your Honor.

9        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

10        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

11        THE COURT:  Do you each understand that the Court may

12   depart from the guideline range under certain circumstances and

13   there are numerous factors the Court considers when fashioning

14   an appropriate sentence?

15        DEFENDANT GONZALES:  Yes, sir, Your Honor.

16        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

17        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18        THE COURT:  Do each of you understand the Court will

19   not be able to determine the guideline range for your case

20   until after the presentence report has been completed and you

21   and the government have had an opportunity to challenge the

22   facts reported by Probation?

23        DEFENDANT GONZALES:  Yes, sir, Your Honor.

24        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

25        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

1          THE COURT:  Do each of you also understand parole has

2     been abolished and if you're sentenced to prison, you will not

3     be released on parole?

4          DEFENDANT GONZALES:  Yes, sir, Your Honor.

5          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

6          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

7          THE COURT:  I'll now explain the rights that by

8     pleading guilty you're each waiving and giving up.

9               You would have a right to be represented by

10    counsel, either one you retain for yourself or one appointed

11    for you by the Court.

12              You'd have a right to remain silent.

13              You'd be entitled to a speedy and public trial by

14    a jury of 12 or by the judge if a jury trial is waived.

15              Before you could be found guilty, the government

16    would be required to prove at trial, by competent evidence

17    beyond a reasonable doubt, the facts charged in the Second

18    Superseding Indictment or in the Superseding Bills of

19    Information.

20              At trial, the government would be required to

21    confront you with witnesses upon whose testimony it relies to

22    obtain a conviction and you would have the right to

23    cross-examine those witnesses.

24              At trial you'd be presumed innocent until such

25    time, if ever, the government establishes your guilt by

1       competent evidence beyond a reasonable doubt.

2                   Before trial, you would be entitled to compulsory

3       process to call witnesses.

4                   If you were tried by a jury, all 12 jurors must

5       agree on your guilt before you could be found guilty.  If you

6       are found guilty, you would have a right to appeal your

7       conviction as well as your sentence.

8                   Do you understand that if I accept your guilty

9       pleas, you would not be entitled to a trial and the government

10      would not be required to prove you're guilty?

11               DEFENDANT GONZALES:  Yes, sir, Your Honor.

12               DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

13               DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

14               THE COURT:  You understand if you plead guilty and I

15      accept your guilty pleas, you'd be waiving and giving up your

16      right to trial and all the other rights I just explained to

17      you?

18               DEFENDANT GONZALES:  Yes, sir, Your Honor.

19               DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

20               DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

21               THE COURT:  Do you fully understand if I accept your

22      guilty pleas, there will be no trial and I will simply enter a

23      judgment of guilty and sentence each of you on the basis of

24      your guilty pleas?

25               DEFENDANT GONZALES:  Yes, sir, Your Honor.

1          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

2          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

3          THE COURT:  Are you each willing to waive and give up

4     your right to trial by a jury or judge?

5          DEFENDANT GONZALES:  Yes, sir, Your Honor.

6          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

7          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

8          THE COURT:  Are you each pleading guilty because you

9     are, in fact, guilty of the crime charged?

10          DEFENDANT GONZALES:  Yes, sir, Your Honor.

11          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

12          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

13          THE COURT:  To put it another way, are you pleading

14     guilty because you did the acts charged in Count 1 of your

15     respective charging documents?

16          DEFENDANT GONZALES:  Yes, sir, Your Honor.

17          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

18          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

19          THE COURT:  Have any of you been influenced or

20     persuaded in any way to plead guilty because of any promise of

21     leniency or other things made by anyone?

22          DEFENDANT GONZALES:  No, sir, Your Honor.

23          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

24          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

25          THE COURT:  Have any of you been influenced or

1    persuaded to plead guilty because of any threats made by
2    anyone?
3            DEFENDANT GONZALES:  No, Your Honor.
4            DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.
5            DEFENDANT GABRIEL RODRIGUEZ:  No, sir.
6            THE COURT:  Other than what is in the plea agreement
7    and what I've stated to you in open court, has anyone,
8    including your attorney, told any of you what sentence you
9    might receive if I accept your guilty pleas?
10           DEFENDANT GONZALES:  No, sir, Your Honor.
11           DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.
12           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.
13           THE COURT:  What was told to you that you might
14   receive?
15           DEFENDANT GABRIEL RODRIGUEZ:  I did not understand that
16   question.
17           THE COURT:  I'll repeat it.  Other than what is in the
18   plea agreement and what I've stated to you in open court, has
19   anyone, including your attorney, told you what sentence you
20   might receive if I accept your guilty plea?
21           DEFENDANT GABRIEL RODRIGUEZ:  No, sir.  No one.  No.
22           THE COURT:  You understood the question?
23           DEFENDANT GABRIEL RODRIGUEZ:  Yes.
24           THE COURT:  Mr. Gonzales and Mr. Rodriguez, are either
25   of you aware of any representation by the Court, the

1    government, your counsel or anyone else that you will be

2    sentenced below the 10-year mandatory minimum?

3              DEFENDANT GONZALES:  No, sir, Your Honor.

4              DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

5              THE COURT:  Do you each understand that even if the

6    government moves to have you sentenced below the mandatory

7    minimum, the Court is not obligated to do so?

8              DEFENDANT GONZALES:  Yes, sir, Your Honor.

9              DEFENDANT GABRIEL RODRIGUEZ:  Yes, I understand, sir.

10   Yes.

11             THE COURT:  Now, Mr. Gonzales and Mr. and

12   Mrs. Rodriguez, have each of you had sufficient time to discuss

13   with your attorney the facts of your case and any possible

14   defenses you may have?

15             DEFENDANT GONZALES:  Yes, sir, Your Honor.

16             DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

17             DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18             THE COURT:  Are you each entirely satisfied with the

19   advice and services of your counsel?

20             DEFENDANT GONZALES:  Yes, sir, Your Honor.

21             DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

22             DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

23             THE COURT:  Are there plea agreements in this case?

24             MR. JONES:  Yes, Your Honor.

25             THE COURT:  Let's summarize them and authenticate them,

1    please.

2        MR. JONES:  Yes, sir.  I have a plea agreement for

3    Mr. Nicanor Gonzales, Mrs. Hermelinda Rodriguez and

4    Mr. Gabriel Rodriguez.

5        THE COURT:  Do me a favor.  Let's summarize what is

6    common to all of them and then you can state individually what

7    is individual to each of the defendants.

8        MR. JONES:  Yes, sir.  Okay.  The commonality regarding

9    all the plea agreements is as follows:

10           In each of the plea agreements, each defendant

11   waives his or her appellate rights.  However, each defendant

12   retains the right to appeal any sentence in excess of a

13   statutory maximum and each reserves the right to raise a claim

14   of ineffective assistance of counsel if it affected the

15   validity of the waiver or the validity of the guilty plea

16   itself.

17           Each plea agreement for each defendant, they

18   agree to waive their rights pursuant to Rule 410(a) of the

19   Federal Rules of Evidence.  In other words, if any defendant

20   violates the plea agreement, withdraws his or her plea or for

21   whatever reason the plea is set aside, the government can use

22   any statements made to law enforcement or the government by any

23   of the defendants, including their respective signed factual

24   bases, against the respective defendant.

25           Also in each plea agreement is cooperation

1   language.  Pursuant to each plea agreement, each defendant

2   agrees to submit to interviews whenever or wherever requested

3   by law enforcement and is required to be truthful at all times.

4   Each defendant agrees to testify at trial or before a grand

5   jury if requested; and if not truthful, the agreements can be

6   rendered null and void.

7          The plea agreements further state that the

8   government has the discretion to notify the Court of any

9   cooperation rendered by any defendant prior to sentencing.  The

10  government gets to determine whether or not the defendant has

11  rendered substantial assistance and determine whether or not to

12  file any 5K motions requesting a downward departure with the

13  Court.

14         Also, each plea agreement -- this is common to

15  each defendant -- the defendants agree to forfeit any and all

16  proceeds or assets derived from the commission of the offenses

17  to which they are pleading guilty to today.

18         Now, Mr. Gabriel Rodriguez and Mr. Nicanor

19  Gonzales are pleading guilty to conspiracy to distribute and

20  possess with the intent to distribute five kilograms or more of

21  cocaine hydrochloride and one kilogram or more of heroin.

22      THE COURT:  Who is pleading guilty to that?

23      MR. JONES:  Mr. Nicanor Gonzales is pleading guilty by

24  way of Second Superseding Indictment and Mr. Gabriel Rodriguez

25  is pleading guilty by way of a Superseding Bill of Information.

1          THE COURT:  To what?

2          MR. JONES:  To conspiracy to distribute and possess

3     with intent to distribute --

4          THE COURT:  I thought you mentioned the drugs and I

5     thought Mr. Gonzales is only pleading to the cocaine, not the

6     heroin.

7          MR. JONES:  Mr. Gonzales is pleading to the cocaine.

8     Excuse me.

9               Mr. Gabriel Rodriguez is pleading guilty to --

10         THE COURT:  To both.

11         MR. JONES:  -- conspiracy to distribute five kilograms

12    or more of cocaine hydrochloride and one kilogram or more of

13    heroin.

14              In exchange for their pleas, in exchange for

15    Mr. Gabriel Rodriguez's plea and Mr. Nicanor Gonzales' plea,

16    the government agrees to charge neither defendant as a multiple

17    offender under Title 21, United States Code, Section 851, which

18    would have resulted in an enhanced mandatory minimum sentence

19    for both defendants.

20              In exchange for Mr. Nicanor Gonzales' plea, the

21    government agrees to dismiss the Second Superseding Indictment

22    at sentencing.

23              And for Mr. Gabriel Rodriguez, the government

24    agrees to dismiss -- Excuse me.  For Mr. Nicanor Gonzales --

25    excuse me -- the government agrees the original -- agrees to

1    dismiss the original and Second Superseding Indictments.

2           For Mr. Gabriel Rodriguez, the government agrees

3    to dismiss the Second Superseding Indictment at sentencing.

4           For Ms. Hermelinda Rodriguez, she's pleading

5    guilty to the one-count Superseding Bill of Information

6    charging with misprision of a felony.

7           In exchange for her guilty plea, the

8    government -- well, she also agrees to waive venue and consents

9    to prosecution here in the Eastern District of Louisiana.

10          In exchange for her plea --

11          THE COURT:  Wait.  She's agreed to waive venue?

12          MR. JONES:  Yes, she has, Your Honor.

13          THE COURT:  We have a written waiver of venue?

14          MR. JONES:  We have it in the plea agreement,

15   Your Honor.

16          THE COURT:  Other than what's in the plea agreement, is

17   there a written waiver of venue?

18          MR. JONES:  No, Your Honor.  It's just in the plea

19   agreement.

20          THE COURT:  Hold on a second.  Well, her Superseding

21   Bill of Information for misprision says it occurred in the

22   Eastern District of Louisiana and elsewhere.

23          MR. JONES:  We agree and there may not be an issue; but

24   in an abundance of caution, with agreement of counsel, she

25   agreed to waive venue.  But I do agree and we both agree,

1   Your Honor, that venue is appropriate given the charging

2   documents because the car did travel through the Eastern

3   District of Louisiana.  There is no issue there.

4           THE COURT:  So on a misprision of a felony, y'all take

5   the position that venue is proper -- since they traveled

6   through the Eastern District of Louisiana, venue is proper

7   here?

8           MR. JONES:  Yes, Your Honor.

9           THE COURT:  Does the defense agree with that as to

10  Mrs. Rodriguez?

11          MR. ST. MARTIN:  That's the agreement, Your Honor.

12          THE COURT:  So you agree legally he's correct?

13          MR. ST. MARTIN:  Yes, sir.

14          THE COURT:  Okay.  Go ahead.

15          MR. JONES:  Also as to Hermelinda Rodriguez, the plea

16  agreement outlines the maximum penalties she's facing.  She

17  faces a maximum term of three years imprisonment, a $250,000

18  fine, a $100 special assessment, and up to one year of

19  supervised release.

20              I do not recall if I said the penalties for

21  Mr. Nicanor Gonzales and Mr. Gabriel Rodriguez, but they are

22  the same.  The maximum penalties for both Mr. Nicanor Gonzales

23  and Gabriel Rodriguez are a mandatory minimum term of

24  imprisonment of 10 years, a maximum of life imprisonment, a

25  $10 million fine, a $100 special assessment, and a term of

1    supervised release of at least five years.

2              The plea agreements for all three defendants have

3    previously been provided to their respective counsel and

4    themselves, all of whom have read, reviewed and signed.

5              At this time I hold in my hand a five-page plea

6    agreement for Mr. Nicanor Gonzales, who has previously had an

7    opportunity to read and review and sign with the assistance of

8    his attorneys.

9              Mr. Gonzales, do you recognize this plea

10   agreement that I hold before you at this time?

11            DEFENDANT GONZALES:  Yes, sir.

12            MR. JONES:  Have you had an opportunity to read and

13   review it?

14            DEFENDANT GONZALES:  Yes, sir.

15            MR. JONES:  You've read every single page?

16            DEFENDANT GONZALES:  Yes, sir.

17            MR. JONES:  You reviewed it and discussed it with your

18   attorney?

19            DEFENDANT GONZALES:  Yes, sir.

20            MR. JONES:  Is this your signature on the fifth and

21   final page of the plea agreement?

22            DEFENDANT GONZALES:  That's correct, sir.

23            MR. JONES:  Mr. Williams -- and I see Mr. Sauzer is

24   here as well -- as Mr. Gonzales' attorneys, you-all had an

25   opportunity to discuss, read and review the plea agreement with

1    Mr. Gonzales.

2          MR. WILLIAMS:  We have, Mr. Jones.

3          MR. JONES:  And, Mr. Williams, as Mr. Gonzales'

4    attorney, is this your signature on the fifth and final page of

5    the plea agreement?

6          MR. WILLIAMS:  Yes, it is.

7          MR. JONES:  And, Your Honor, I've signed on behalf of

8    the government.

9              And at this time I would offer Mr. Nicanor

10   Gonzales' plea agreement into the record at this time.

11         THE COURT:  All right.  It will be admitted.

12         MR. JONES:  Ms. Hermelinda Rodriguez -- Your Honor, I

13   hold in my hand a five-page plea agreement for

14   Ms. Hermelinda Rodriguez, which has previously been provided to

15   her and her counsel.  For the record, that's

16   Mr. Stephen St. Martin.

17             Ms. Rodriguez, have you had an opportunity to

18   read and review this plea agreement with your attorney?

19         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

20         MR. JONES:  You've read every single page?

21         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

22         MR. JONES:  And is this your signature on the fifth and

23   final page?

24         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir, that's

25   correct.

```
 1          MR. JONES:  And Mr. St. Martin, you've reviewed this
 2   plea agreement with your client, Ms. Rodriguez?
 3          MR. ST. MARTIN:  I have.
 4          MR. JONES:  This is your signature on the fifth and
 5   final page?
 6          MR. ST. MARTIN:  It is.
 7          MR. JONES:  I've signed this on behalf of the
 8   government, Your Honor.  At this time, I'll offer it into the
 9   record.
10          THE COURT:  It's admitted.
11          MR. JONES:  Third, I hold a five-page plea agreement
12   for Mr. Gabriel Rodriguez, which has also been provided to him
13   prior to today.  And he's had an opportunity to read and review
14   it with his counsel and sign it.
15          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.
16          MR. JONES:  Mr. Rodriguez, is this the plea agreement
17   you reviewed with your attorney?
18          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.
19          MR. JONES:  And you've read the plea agreement in its
20   entirety?
21          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.
22          MR. JONES:  And you reviewed it with your attorney?
23          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.
24          MR. JONES:  This is your signature on the fifth and
25   final page of the plea agreement?
```

1            DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

2            MR. JONES:  And, Mr. Thering, as Mr. Rodriguez's

3    counsel of record, you had an opportunity to read and review

4    and discuss the plea agreement with Mr. Rodriguez?

5            MR. THERING:  I have.

6            MR. JONES:  And you signed it on the fifth and final

7    page?

8            MR. THERING:  I did.

9            MR. JONES:  That's your signature there?

10           MR. THERING:  It is.

11           MR. JONES:  And I've signed on behalf of the

12   government, Your Honor.

13               And at this time, I'll offer Mr. Gabriel

14   Rodriguez's plea agreement into the record.

15           THE COURT:  Mr. Rodriguez's plea agreement has been

16   read to him in Spanish by the interpreter; is that correct?

17           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18           THE COURT:  Counsel, what has been summarized by the

19   government, is that your understanding of the plea agreement?

20           MR. WILLIAMS:  On behalf of Mr. Gonzales, yes, Judge.

21           MR. ST. MARTIN:  For Ms. Hermelinda Rodriguez, it is,

22   Your Honor.

23           MR. THERING:  Mr. Gabriel Rodriguez, likewise,

24   Your Honor.

25           THE COURT:  All right.  I want to go into some

1   discussion about this waiver of appellate and collateral

2   challenge rights to make sure each of you understand.

3            As part of your plea agreements, you've each

4   waived your right in most respects to appeal your conviction

5   and/or your sentence.  Do each of you understand that in

6   addition to giving up your right to a direct appeal, you have

7   further waived your right to contest your conviction and/or

8   your sentence in any collateral proceeding pursuant to

9   28, U.S.C, Sections 2255 and 2241, which allow defendants to

10   challenge whether their sentence and/or conviction were

11   constitutional?

12            Do each of you understand that?

13            DEFENDANT GONZALES:  Yes, sir, Your Honor.

14            DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

15            DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

16            THE COURT:  You have reserved the right, however, to

17   bring a direct appeal of any sentence imposed in excess of the

18   statutory maximum.  You may also challenge your conviction or

19   sentence if you can show you received ineffective assistance of

20   counsel and the claimed ineffective assistance directly

21   affected the validity of your plea or the waiver of appeal.

22            A waiver of appeal in a plea agreement would also

23   not be enforced to bar a direct appeal where the Second

24   Superseding Indictment or Superseding Bills of Information did

25   not state an offense and/or where the factual basis for your

1    pleas did not show the commission of an offense.  Otherwise,

2    you'd have no right to appeal or collaterally attack your

3    conviction and/or sentence.

4              Now, do each of you understand that with the

5    exception of the situations I just listed, you're waiving your

6    right to appeal or contest your guilty plea, fine, and any

7    restitution imposed by any judge under any applicable

8    restitution statute including but not limited to your right to

9    appeal any rulings on pretrial motions of any kind?  Do each of

10   you understand that?

11             DEFENDANT GONZALES:  Yes, sir, Your Honor.

12             DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

13             DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

14             THE COURT:  With the exceptions I previously listed to

15   you, you're each waiving your right to appeal or contest your

16   sentence in certain respects.  Do each of you understand that

17   means you're each waiving your right to appeal a final sentence

18   imposed in violation of law unless such sentence exceeded the

19   statutory maximum; you're waiving your right to appeal a final

20   sentence that was imposed as a result of an incorrect

21   application of sentencing guidelines; you're waiving your right

22   to appeal a final sentence that is greater than the guideline

23   range including a sentence that includes a greater fine, term

24   of imprisonment, probation or supervised release than the

25   maximum established in the guideline range; you're waiving your

1   right to appeal a final sentence that includes a more limiting

2   condition of probation or supervised release than the maximum

3   established in the guideline range; and you're waiving your

4   right to appeal a final sentence that was imposed for an

5   offense for which there's no sentencing guideline and is

6   plainly unreasonable?

7            Do each of you understand you're waiving all

8   those rights?

9            DEFENDANT GONZALES:  Yes, sir, Your Honor.

10           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

11           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

12           THE COURT:  Do each of you understand that you're

13   waiving, giving up any right you might have to contest or

14   appeal any order, decision or judgment arising out of or

15   related to the U.S. Code with respect to a sentence of

16   imprisonment based on a sentencing guideline range that the

17   Sentencing Commission has subsequently lowered?  Do each of you

18   understand that?

19           DEFENDANT GONZALES:  Yes, sir, Your Honor.

20           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

21           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

22           THE COURT:  Do each of you understand you're waiving

23   and giving up your right to challenge any U.S. Sentencing

24   Guidelines determinations and their application by any judge to

25   your sentence and judgment?

1       DEFENDANT GONZALES:  Yes, sir, Your Honor.

2       DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

3       DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

4       THE COURT:  Do each of you understand that you're

5   waiving and giving up your right to collaterally challenge your

6   sentence including but not limited to any rights which arise

7   under the U.S. Code, Federal Rules of Civil Procedure, Federal

8   Rules of Evidence and any other collateral challenges to your

9   sentence of any kind?

10      DEFENDANT GONZALES:  Yes, sir, Your Honor.

11      DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

12      DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

13      THE COURT:  Have each of you had a chance to discuss

14  your waiver with counsel?

15      DEFENDANT GONZALES:  Yes, sir, Your Honor.

16      DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

17      DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18      THE COURT:  Did your counsel explain the waiver to each

19  of you including the rights you are and are not giving up?

20      DEFENDANT GONZALES:  Yes, sir, Your Honor.

21      DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

22      DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

23      THE COURT:  Are you each satisfied with the advice your

24  attorney gave you regarding the waiver?

25      DEFENDANT GONZALES:  Yes, sir, Your Honor.

1     DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

2     DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

3     THE COURT:  Do any of you have any questions about the

4  waiver?

5     DEFENDANT GONZALES:  No, sir, Your Honor.

6     DEFENDANT HERMELINDA RODRIGUEZ:  No, sir, Your Honor.

7     DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

8     THE COURT:  Did anyone coerce any of you or promise you

9  anything if you entered into the waiver?

10     DEFENDANT GONZALES:  No, sir, Your Honor.

11     DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

12     DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

13     THE COURT:  Are each of you entering into the waiver

14  voluntarily and of your own free will?

15     DEFENDANT GONZALES:  Yes, sir, Your Honor.

16     DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir, Your Honor.

17     DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18     THE COURT:  Are each of you satisfied that you

19  understand the waiver?

20     DEFENDANT GONZALES:  Yes, sir, Your Honor.

21     DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

22     DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

23     THE COURT:  Do you each understand that as a

24  consequence of the plea agreements entered into by you and the

25  government, you are required to forfeit to the U.S. any and all

1   property constituting or derived from any proceeds you

2   obtained, directly or indirectly, as a result of the violations

3   charged in the Second Superseding Indictment or the Superseding

4   Bills of Information and any and all property used or intended

5   to be used in any manner or part to commit and to facilitate

6   the commission of the violations charged?  Do you each

7   understand that?

8           DEFENDANT GONZALES:  Yes, sir, Your Honor.

9           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

10          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

11          THE COURT:  Do each of you understand that you're

12   waiving your right to contest forfeiture including but not

13   limited to forfeiture of any asset charged in the Second

14   Superseding Indictment or the Superseding Bills of Information

15   or any Bill of Particulars filed by the U.S.?  Do you

16   understand that?

17          DEFENDANT GONZALES:  Yes, sir, Your Honor.

18          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

19          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

20          THE COURT:  Do you each understand that with respect to

21   any asset which you've agreed to forfeit, you're waiving any

22   constitutional or statutory challenge raised in any manner to

23   any forfeiture carried out in accordance with the plea

24   agreements?

25          DEFENDANT GONZALES:  Yes, sir, Your Honor.

1          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

2          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

3          THE COURT:  Do each of you understand that if you

4     violate the plea agreement, withdraw your decision to plead

5     guilty or your guilty plea is set aside for any other reason,

6     the government has a right to use certain statements and

7     documents against you in any criminal proceeding for any

8     purpose?

9          DEFENDANT GONZALES:  Yes, sir, Your Honor.

10          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

11          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.  Yes, sir.

12          THE COURT:  Do you each understand that this includes

13     any of your statements made to law enforcement agents or

14     attorneys for a prosecuting authority during plea discussions

15     or during any court proceeding involving your plea of guilty

16     and any factual bases or summaries you signed?

17          DEFENDANT GONZALES:  Yes, sir, Your Honor.

18          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

19          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

20          THE COURT:  Do you each understand that this includes

21     any leads resulting from those statements, factual bases or

22     summaries?

23          DEFENDANT GONZALES:  Yes, sir.

24          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

25          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

1        THE COURT:  Do you each understand that Rule 410 of the

2   Federal Rules of Evidence provides you protection from the use

3   of such admissions made during plea negotiations or during any

4   proceeding pursuant to Rule 11 of the Federal Rules of Criminal

5   Procedure?

6        DEFENDANT GONZALES:  Yes, sir, Your Honor.

7        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

8        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

9        THE COURT:  Do you each knowingly and voluntarily waive

10  that protection and those rights afforded by Rule 410 as I just

11  stated?

12       DEFENDANT GONZALES:  Yes, sir, Your Honor.

13       DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

14       DEFENDANT GABRIEL RODRIGUEZ:  Yes.

15       THE COURT:  All right.  Hang in there.  We only have

16  another hour and a half to go for the rest of it.  Things

17  aren't always bigger in Texas.  All right.

18            Do you each understand what the U.S. Attorney

19  read, and is that your understanding of the plea agreement in

20  your case?

21       DEFENDANT GONZALES:  Yes, sir, Your Honor.

22       DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

23       DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

24       THE COURT:  Have you each read the plea agreement in

25  your case?

1          DEFENDANT GONZALES:  Yes, sir, Your Honor.

2          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

3          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

4          THE COURT:  Do you each understand everything in the

5    plea agreement?

6          DEFENDANT GONZALES:  Yes, sir, Your Honor.

7          DEFENDANT HERMELINDA RODRIGUEZ:  Yes sir, Your Honor.

8          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

9          THE COURT:  Is there anything in the plea agreement

10    with which you disagree?

11          DEFENDANT GONZALES:  No, sir, Your Honor.

12          DEFENDANT HERMELINDA RODRIGUEZ:  No, sir, Your Honor.

13          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

14          THE COURT:  Is there anything that's been left out of

15    the plea agreement?

16          DEFENDANT GONZALES:  No, sir, Your Honor.

17          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

18          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

19          THE COURT:  Is there anything in the plea agreement

20    you'd like me to explain to you?

21          DEFENDANT GONZALES:  No, sir, Your Honor.

22          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

23          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

24          THE COURT:  Do you each understand that any discussions

25    with your attorney or anyone else regarding sentencing

1    guidelines merely provide rough estimates, and the Court is not

2    bound by those discussions?

3           DEFENDANT GONZALES:  Yes, sir, Your Honor.

4           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

5           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

6           THE COURT:  Has anyone connected with the government or

7    anyone connected with law enforcement or anyone else at any

8    time, other than rough estimates of sentencing guidelines, made

9    any prediction or promise to you as to what your sentence will

10   be?

11          DEFENDANT GONZALES:  No, sir, Your Honor.

12          DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

13          DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

14          THE COURT:  All right.  To the government, has the

15   government made any other plea offers to Mr. Gonzales,

16   Mr. Rodriguez or Mrs. Rodriguez other than what is set forth in

17   the plea agreement?

18          MR. JONES:  No, Your Honor.

19          THE COURT:  Counsel, has there been any other plea

20   offers to your clients?

21          MR. WILLIAMS:  Williams on behalf of Gonzales.  No,

22   Your Honor.

23          MR. ST. MARTIN:  Stephen St. Martin on behalf of

24   Ms. Hermelinda Rodriguez.  No, Your Honor.

25          MR. THERING:  On behalf of Gabriel Rodriguez, no,

1    Your Honor.

2          THE COURT:  Now, Defendants, Mr. Gonzales and Mr. and

3    Mrs. Rodriguez, to the best of your knowledge is what your

4    attorneys just said correct?

5          DEFENDANT GONZALES:  Yes, sir.

6          DEFENDANT HERMELINDA RODRIGUEZ:  Correct.  Yes,

7    Your Honor.

8          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

9          THE COURT:  Do any of you have any questions for your

10   attorneys or the government about any plea offers that are not

11   set forth in the plea agreement?

12         DEFENDANT GONZALES:  No, sir, Your Honor.

13         DEFENDANT HERMELINDA RODRIGUEZ:  No, sir, Your Honor.

14         DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

15         THE COURT:  Are there any other or different promises

16   or assurances that were made to any of you that are not written

17   down in the plea agreements?

18         DEFENDANT GONZALES:  No, sir.

19         DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

20         DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

21         THE COURT:  Are there any secret agreements that you've

22   been informed of whether with the government, the Court, or

23   anyone else that have been made in an effort to persuade you to

24   plead guilty?

25         DEFENDANT GONZALES:  No, sir, Your Honor.

1    DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

2    DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

3    THE COURT:  All right.  Counsel, have each of you

4    explained the charges to your clients?

5    MR. WILLIAMS:  Yes, I have to Mr. Gonzales, Judge.

6    MR. ST. MARTIN:  I have to Ms. Hermelinda Rodriguez,

7    Your Honor.

8    MR. THERING:  To Mr. Rodriguez, I have, Your Honor.

9    THE COURT:  Are each of you satisfied your client knows

10   what he or she is charged with?

11   MR. WILLIAMS:  I am, Judge.

12   MR. ST. MARTIN:  Ms. Rodriguez does, Your Honor.

13   MR. THERING:  Yes, Your Honor.

14   THE COURT:  Did you have an opportunity to explain the

15   waiver of appellate rights both on direct appeal and through

16   collateral attack to your clients?

17   MR. WILLIAMS:  Yes, Your Honor.

18   MR. ST. MARTIN:  Yes, Your Honor.

19   MR. THERING:  I have, Your Honor.

20   THE COURT:  Are you satisfied your clients understand

21   the rights that they are maintaining and giving up?

22   MR. WILLIAMS:  Completely satisfied, Judge.

23   MR. ST. MARTIN:  She does, Your Honor.

24   MR. THERING:  Yes, Your Honor.

25   THE COURT:  Have you had full opportunity to

1    investigate the facts of and the law applicable to the case as

2    well as any possible defenses your clients may have and to

3    advise and counsel with your clients?

4              MR. WILLIAMS:  Yes, Your Honor.

5              MR. ST. MARTIN:  Yes, Your Honor.

6              MR. THERING:  Yes, Your Honor.

7              THE COURT:  Do each of you join with your client in his

8    or her decision to plead guilty?

9              MR. WILLIAMS:  I do, Judge.

10             MR. ST. MARTIN:  Yes, Your Honor.

11             MR. THERING:  I do, Your Honor.

12             THE COURT:  Are each of you satisfied your client is

13   pleading guilty voluntarily and understandingly with full

14   knowledge of the consequences of his or her plea?

15             MR. WILLIAMS:  Yes, Your Honor.

16             MR. ST. MARTIN:  Yes, she is, Your Honor.

17             MR. THERING:  Yes, Your Honor.

18             THE COURT:  Have any of you made any representation to

19   your client as to what sentence I will impose?

20             MR. WILLIAMS:  Only rough estimates, Judge; but I let

21   Mr. Gonzales know that the sole discretion rests with the

22   Court.

23             THE COURT:  Does your client understand that I can

24   impose the maximum allowable by law?

25             MR. WILLIAMS:  Completely up to the Court, Judge.

1          MR. ST. MARTIN:  Same with me, Your Honor, for

2     Ms. Hermelinda Rodriguez.  Rough estimates, but did explain to

3     her that it could be full range of punishment up to the full

4     three years, you are going to impose what you see fit.

5          MR. THERING:  Likewise, Your Honor.

6          THE COURT:  All right.  Now, Mr. Gonzales and Mr. and

7     Mrs. Rodriguez, have you each heard and understood the

8     questions I just directed to your attorney and their answers?

9          DEFENDANT GONZALES:  Yes, sir.

10         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, I did,

11    Your Honor.

12         DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

13         THE COURT:  Do any of you have any questions or

14    comments to make concerning any of those questions or your

15    attorney's answers or other statements made by your counsel?

16         DEFENDANT GONZALES:  No, sir.

17         DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

18         DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

19         THE COURT:  Mr.  Gonzales?

20         DEFENDANT GONZALES:  Yes, sir.

21         THE COURT:  Did you answer that question?

22         DEFENDANT GONZALES:  Yes, sir, I did, sir.

23         THE COURT:  What did you say?

24         DEFENDANT GONZALES:  No, sir, Your Honor.

25         THE COURT:  All right.  Now, in connection with the

1    defense of your case, did your counsel fail to investigate or

2    follow-up on anything that you requested that he investigate or

3    follow-up on, which would include but not be limited to the

4    interviewing of witnesses and/or the locating and review of

5    documents?

6            DEFENDANT GONZALES:  No, sir, Your Honor.

7            DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

8            DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

9            THE COURT:  What's the government's evidence with

10   respect to Mr. Gonzales and the Second Superseding Indictment

11   as well as the government's evidence with respect to

12   Mr. Rodriguez and the Superseding Bill of Information and the

13   government's evidence with respect to Mrs. Rodriguez and her

14   respective Superseding Bill of Information?

15            And to the extent the factual basis is identical,

16   let's indicate that so we're not reading it three times; but to

17   the extent there are differences, let's note that as well.

18            MR. JONES:  Yes, Your Honor.  If I may, I'll read

19   Mr. and Mrs. Rodriguez's because I think that will flow a

20   little faster.

21            THE COURT:  By the way, has the factual basis been read

22   in Spanish to Mr. Rodriguez?

23            THE INTERPRETER:  I did, Your Honor.

24            THE COURT:  Thank you.

25            DEFENDANT GONZALES:  Yes, sir.

1          THE COURT:  As it pertains to Ms. Hermelinda Rodriguez,

2     the above-named defendant, Hermelinda Rodriguez, has agreed to

3     plead guilty as charged to the one-count Superseding Bill of

4     Information now pending against her.  Should this matter have

5     proceeded to trial, the United States of America would have

6     proven beyond a reasonable doubt, through the introduction of

7     relevant, competent and admissible testimonial, physical and

8     demonstrative evidence the following facts to support the

9     allegation against the defendant, Hermelinda Rodriguez.

10          Unless stated otherwise, all the facts set forth

11     herein occurred within the Eastern District of Louisiana.

12          As to Mr. Gabriel Rodriguez, he agrees to plead

13     guilty as charged to the one-count superseding bill of

14     information now pending against him.  Should this matter have

15     proceeded to trial, the government would have proven beyond a

16     reasonable doubt, through the introduction of the same, to

17     support the allegation against him as well.

18          And unless stated otherwise, all the facts set

19     forth herein occurred within the Eastern District of Louisiana.

20          Until I state otherwise, everything I read from

21     this point on is common to both defendants.

22          In 2014, a confidential informant advised law

23     enforcement officers of the drug trafficking activities of

24     Edwin Martinez, a high-level cocaine and heroin trafficker from

25     Houston, Texas.  DEA Special Agents' investigation revealed and

1   confirmed that Martinez began distributing cocaine in

2   approximately the late 1990s --

3           THE INTERPRETER:  I'm sorry.  I just can't hear.  Go

4   ahead.

5           MR. JONES:  DEA Special Agents' investigation revealed

6   and confirmed that Martinez began distributing cocaine in

7   approximately the late 1990s, early 2000s.  Martinez began

8   purchasing multiple kilogram quantities of cocaine and heroin

9   from a number of sources and selling the drugs to a number of

10  distributors in Houston who, in turn, sold multiple kilogram

11  quantities of the cocaine and heroin to customers in the

12  Eastern District of Louisiana and elsewhere with Martinez's

13  knowledge.  Among Martinez's suppliers was an individual herein

14  identified as F.L.

15          Beginning in approximately 2010 or 2011, Martinez

16  began purchasing multiple kilogram quantities of cocaine and

17  heroin from F.L.  F.L. arranged for the drugs to be sent from

18  Mexico to Martinez in Houston via vehicles equipped with hidden

19  compartments.  F.L. sent multiple vehicles at a time several

20  times a month.  Each car's hidden compartment held as many as

21  16 kilograms of cocaine at a time and in most instances the

22  compartments were filled to capacity when F.L. sent the

23  vehicles to Martinez.  Gabriel Rodriguez, Sr., and G.J.

24  delivered drugs to Martinez who used his distributors to supply

25  the drugs to customers in the Eastern District of Louisiana and

1    elsewhere.

2            At times the cars were driven by Gabriel, Sr., or

3    an individual herein identified as G.J.  Accompanying

4    Gabriel Rodriguez, Sr., on some trips from Mexico was his wife,

5    Hermelinda Rodriguez.

6            As Gabriel Rodriguez, Sr., and G.J. delivered the

7    drugs to Martinez in Texas, they would unload the vehicles with

8    Martinez at his residence in Houston or at their residences in

9    Santa Fe or McAllen, Texas, where Martinez would meet them to

10   obtain the cocaine and/or heroin.  Martinez, with the

11   assistance of his associates, would distribute the cocaine both

12   inside and outside the Eastern District of Louisiana.

13           Gabriel Rodriguez, Sr.'s transporting of vehicles

14   with hidden compartments from Mexico to Texas has been

15   documented by Customs and Border Patrol Officers.  On

16   April 22nd, 2012, Gabriel Rodriguez, Sr., was alone driving a

17   2007 Mazda 3 bearing Texas license plate number DD5S281, and

18   entered Texas from Mexico at the Anzalduas, Texas Port of

19   Entry.  Customs and Border Patrol conducted an enforcement

20   examination, including a canine screening of Rodriguez's

21   vehicle.  The canine alerted to the floor of the vehicle.

22   Further inspection by Customs and Border Patrol Officer

23   D. Solis and D. Garza revealed possible deep concealment.

24   Further inspection of the undercarriage of the vehicle revealed

25   tampering to the exhaust shields.  Removal of the shields

1   revealed a compartment, but no contraband was present.

2   Gabriel Rodriguez, Sr., was released.

3         On May 13, 2015, a Harris County, Texas criminal

4   interdiction unit was patrolling State Highway 146 in Baytown,

5   Texas, and observed a Nissan Juke traveling 67 miles per hour

6   in a 60 miles per hour zone.  Harris County Deputy R.L. Wade

7   conducted a traffic stop on the vehicle.  The driver was

8   identified as Gabriel Rodriguez, Sr.  Rodriguez told

9   Deputy Wade that he was traveling from North Carolina where he

10  had been visiting family.  Deputy Wade noticed that

11  Gabriel Rodriguez, Sr., was very nervous.  Deputy Wade advised

12  Gabriel Rodriguez, Sr., he was going to receive a warning for

13  the traffic violation.  Deputy Wade also spoke to the passenger

14  of the vehicle who was identified as Hermelinda Rodriguez, the

15  wife of Gabriel Rodriguez, Sr.  While talking to

16  Hermelinda Rodriguez, Deputy Wade noticed that

17  Hermelinda Rodriguez appeared very nervous and would look at

18  the floorboard while speaking.  Deputy Wade asked

19  Gabriel Rodriguez, Sr., if there was anything illegal in the

20  vehicle.  Gabriel Rodriguez, Sr., nodded his head up and down

21  and then immediately shook his head side to side indicating

22  "No."  Because of the nervous behavior of both vehicle

23  occupants, Deputy Wade asked for verbal permission to search

24  the vehicle.  Gabriel Rodriguez, Sr., gave verbal permission to

25  search the vehicle.

1          While searching the vehicle, Deputy Wade observed

2    that the center console was loose and had been recently

3    removed.  Also, all of the seat bolts had fresh tooling on

4    them.  While looking underneath the backseat, Deputy Wade

5    located a socket that fit all of the seat bolts in the vehicle.

6    Deputy Wade pulled the carpet near the backseat and observed

7    that the carpet had been glued to the floor.

8          Deputy Wade showed Gabriel Rodriguez, Sr., what

9    he found and Gabriel Rodriguez, Sr., told Deputy Wade that the

10   vehicle was in that condition when he purchased it.  After a

11   few minutes, Gabriel Rodriguez, Sr., told Deputy Wade there was

12   approximately 40,000 to $50,000 in United States currency in a

13   hidden compartment in the vehicle.  Gabriel Rodriguez, Sr.,

14   then stated he was paid $2,000 to drive the vehicle.  Agents

15   located the hidden compartment and retrieved 11 bundles, which

16   contained $179,961 in United States currency.  Deputies seized

17   the vehicle.

18         On June 23rd, 2015, agents initiated an

19   investigation to arrest Gabriel Rodriguez, Sr., and

20   Hermelinda Rodriguez for violations of the Federal Controlled

21   Substances Act.  Agents agreed to meet Hermelinda Rodriguez at

22   her residence at 12601 Sunset Circle; Santa Fe, Texas, to

23   return the property seized from the vehicle, which contained

24   the money hidden in the compartment on May 13, 2015.  Agents

25   met with Hermelinda Rodriguez, inventoried the property they

1    were returning to her, and placed her under arrest.  The agents

2    then asked Hermelinda Rodriguez where her husband was and she

3    told the agents he was in a hospital in Mexico.

4              At the same time Hermelinda Rodriguez was telling

5    agents her husband was in a hospital in Mexico, other agents

6    were conducting surveillance at another residence located at

7    7105 Avenue D; Santa Fe, Texas, where Gabriel Rodriguez, Sr.,

8    was located.  After observing Gabriel Rodriguez, Sr., leave the

9    residence in a vehicle, agents stopped the vehicle and placed

10   Gabriel Rodriguez, Sr., under arrest.

11             Prior to arresting Gabriel Rodriguez, Sr., and

12   Hermelinda Rodriguez, agents received information from a

13   confidential source that Gabriel Rodriguez, Sr., and

14   Hermelinda Rodriguez were in possession of a silver

15   Mercedes-Benz that had an aftermarket hidden compartment

16   installed in the vehicle for trafficking narcotics.  Agents

17   located the Mercedes-Benz in the back of the residence where

18   Gabriel Rodriguez, Sr., was arrested.

19             The following reading of this paragraph pertains

20   specifically to Gabriel Rodriguez, Sr.:

21             For purposes of sentencing, the government and

22   Gabriel Rodriguez, Sr., agree and stipulate that the money

23   seized from the vehicle was drug proceeds from drugs supplied

24   by F.L. to the United States and that Gabriel Rodriguez, Sr.,

25   was to return said proceeds to Mexico.  Also for purposes of

1    sentencing, the government and Gabriel Rodriguez, Sr., agree

2    and stipulate that Gabriel Rodriguez, Sr.'s conduct and the

3    conduct of his co-defendants, which was reasonably foreseeable

4    to Gabriel Rodriguez, Sr., involved at least 50 kilograms, but

5    less than 150 kilograms of cocaine hydrochloride and at least

6    10 kilograms, but less than 30 kilograms of heroin.

7              And this factual basis has been provided to

8    Mr. Gabriel Rodriguez prior to today; and he's had an

9    opportunity to read and review it with his attorney.

10             Mr. Gabriel Rodriguez --

11        DEFENDANT GABRIEL RODRIGUEZ:  Yes, I have.

12        THE COURT:  -- you've had an opportunity to read and

13   review this factual basis?

14        DEFENDANT GABRIEL RODRIGUEZ:  Yes.

15        THE COURT:  And you agree with everything that's

16   written in this factual basis and everything that I've read?

17        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

18        THE COURT:  And is this your signature on the fifth and

19   final page of the factual basis?

20        DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

21        THE COURT:  Mr. Thering, as Mr. Rodriguez's attorney,

22   you've had an opportunity to review the factual basis with him?

23        MR. THERING:  I have.

24        MR. JONES:  And everything to your knowledge is true

25   and accurate in the factual basis?

1          MR. THERING:  It is.

2          MR. JONES:  And you signed it for yourself?

3          MR. THERING:  I did.

4          MR. JONES:  And, Your Honor, I signed the factual basis

5     for Gabriel Rodriguez also.

6                At this time I would offer it into the record.

7                What I'm reading now pertains specifically to

8     Ms. Hermelinda Rodriguez.

9                For purposes of sentencing, the government and

10    Hermelinda Rodriguez agree and stipulate that

11    Hermelinda Rodriguez knew that on May 13, 2015,

12    Gabriel Rodriguez, Sr., was trafficking drug proceeds from

13    drugs supplied by F.L. to the United States and that

14    Gabriel Rodriguez, Sr., was to return said proceeds to Mexico.

15         THE INTERPRETER:  I'm sorry.  Where are you reading?

16         MR. JONES:  I'm sorry.  I'm reading Hermelinda's

17    factual basis.

18         THE INTERPRETER:  Right.  What page are you on?

19         MR. JONES:  I'm on the last page, but this part

20    pertains solely to Hermelinda Rodriguez.  I'm sorry.  Excuse

21    me.  The last page.  Page 5.  I'll read it again.

22                For purposes of sentencing, the government and

23    Hermelinda Rodriguez agree and stipulate that

24    Hermelinda Rodriguez knew that on May 13th, 2015,

25    Gabriel Rodriguez, Sr., was trafficking drug proceeds from

1   drugs supplied by F.L. to the United States and that

2   Gabriel Rodriguez, Sr., was to return said proceeds to Mexico.

3   The government and Hermelinda Rodriguez agree and stipulate

4   that she knowingly rode as a passenger with

5   Gabriel Rodriguez, Sr., on May 13th, 2015, as a decoy to

6   conceal from law enforcement the fact that

7   Gabriel Rodriguez, Sr., was trafficking drug proceeds.  The

8   government and Hermelinda Rodriguez further agree and stipulate

9   that while Gabriel Rodriguez, Sr., and Hermelinda Rodriguez

10  were driving with the drug proceeds, the vehicle traveled

11  through the Eastern District of Louisiana.  The government and

12  Hermelinda Rodriguez further agree and stipulate that on

13  January 23rd, 2015, she knowingly attempted to conceal the

14  whereabouts of Gabriel Rodriguez, Sr., by telling them that

15  Gabriel Rodriguez, Sr., was in a hospital in Mexico when she

16  knew, in fact, that he was in Santa Fe, Texas.  Also, for

17  purposes of sentencing, the government and Hermelinda Rodriguez

18  agree and stipulate that Hermelinda Rodriguez's conduct and the

19  conducts of her co-defendants, which was reasonably foreseeable

20  to Hermelinda Rodriguez, involved at least 5 kilograms, but

21  less than 15 kilograms of cocaine hydrochloride and at least

22  one kilogram, but less than three kilograms of heroin.

23          And this factual basis has previously been

24  provided to Ms. Hermelinda Rodriguez for her review with her

25  attorney and signature.

1            Ms. Hermelinda Rodriguez, you've had an

2    opportunity to read the factual basis?

3            DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

4            MR. JONES:  And you heard everything that I read --

5            DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

6            MR. JONES:  -- just a moment ago?

7            DEFENDANT HERMELINDA RODRIGUEZ:  Uh-huh.

8            MR. JONES:  And you agree that everything in the

9    factual basis is true and accurate?

10           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

11           MR. JONES:  Is this your signature on the sixth and

12   final page of the factual basis --

13           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir, it is.

14           MR. JONES:  Mr. St. Martin, as Ms. Rodriguez's

15   attorney, you've had an opportunity to review the factual basis

16   with her?

17           MR. ST. MARTIN:  I have.

18           MR. JONES:  And is this your signature on the sixth and

19   final page of the factual basis?

20           MR. ST. MARTIN:  It is.

21           MR. JONES:  And I've signed on behalf of the

22   government.

23            And at this time I would offer

24   Ms. Hermelinda Rodriguez's factual basis into the record.

25           THE COURT:  Let me go back to something that I asked

1      about before and that's this waiver of venue provision in

2      Ms. Hermelinda Rodriguez's plea agreement.  You agree to waive

3      venue in this matter allowing for prosecution in the Eastern

4      District of Louisiana.

5                   Ms. Rodriguez, it may be very well correct that

6      venue is proper in this district, in the Eastern District of

7      Louisiana; but I notice that one of the acts of concealment

8      occurred in Santa Fe, Texas; is that right?

9               MR. ST. MARTIN:  Yes, Your Honor.

10              DEFENDANT HERMELINDA RODRIGUEZ:  Correct.

11              THE COURT:  What district is that in?

12              MR. ST. MARTIN:  Southern District.

13              THE COURT:  Southern District of Texas?

14              MR. ST. MARTIN:  Yes, Your Honor.

15              THE COURT:  Okay.  So by waiving venue, you are

16     stating, in case venue would be improper in this district --

17     that is, in the Eastern District of Louisiana in New Orleans --

18     what you're doing is you're understanding that you have the

19     right to be prosecuted in the Southern District of Texas where

20     the offense was committed, but you're understanding that right

21     and you're waiving any right you have to prosecution in that

22     district and you're consenting to prosecution in this district.

23     Do you understand that?

24              DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

25              THE COURT:  Have you had an opportunity to discuss that

1    with your counsel?

2         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

3         THE COURT:  And I'm not saying that the

4    Southern District of Texas is the only district where this

5    could have been brought.  It may very well have been able to be

6    brought in this district as well, but you're waiving any

7    argument that you should have been prosecuted in Texas and not

8    here in Louisiana.  Do you understand that?

9         DEFENDANT HERMELINDA RODRIGUEZ:  I understand,

10   Your Honor.

11        THE COURT:  Do you have any questions about that waiver

12   of venue?

13        DEFENDANT HERMELINDA RODRIGUEZ:  No, sir, Your Honor.

14        THE COURT:  Do you understand what I've told you?

15        DEFENDANT HERMELINDA RODRIGUEZ:  Yes, sir.

16        THE COURT:  Do you want to ask your attorney any

17   questions outside of my presence or in front of me about this?

18        DEFENDANT HERMELINDA RODRIGUEZ:  No, Your Honor.

19        THE COURT:  All right.

20             Now, Mr. Gonzales and Mr. and Mrs. Rodriguez, do

21   any of you wish to ask or have your attorney ask the U.S.

22   Attorney any questions about the factual basis?

23        DEFENDANT GONZALES:  No, sir, Your Honor.

24        DEFENDANT GABRIEL RODRIGUEZ:  No, sir.

25        THE COURT:  Do you have any questions?

1          MR. ST. MARTIN:  Do you have any questions for the U.S.

2    Attorney?

3          THE COURT:  About the factual basis?

4          DEFENDANT HERMELINDA RODRIGUEZ:  No, sir.

5          THE COURT:  Have you each heard the evidence and facts

6    that detail the charges against you?

7          DEFENDANT GONZALES:  Yes, sir, Your Honor.

8          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

9          MR. JONES:  Your Honor, excuse me.  Just to make sure,

10   the factual basis I've read pertain to --

11         THE COURT:  I'm sorry.  You're right.  So really what

12   I'm referring to now -- I'm not returning to Mr. Gonzales.  I'm

13   referring to Mr. and Mrs. Rodriguez.  I'm sorry.

14              Mr. and Mrs. Rodriguez, again, you've indicated

15   you don't have any questions for the U.S. Attorney about your

16   factual basis; is that right?

17         DEFENDANT HERMELINDA RODRIGUEZ:  Correct, Your Honor.

18   Correct.

19         DEFENDANT GABRIEL RODRIGUEZ:  No, I have none, sir.

20         THE COURT:  Okay.  And you've each heard the evidence

21   and facts that detail the charges against you; is that correct?

22         DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

23         DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

24         THE COURT:  Do each of you understand the government's

25   evidence?

1          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

2          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

3          THE COURT:  Are the U.S. Attorney's statements correct?

4          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

5          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

6          THE COURT:  Do you each agree that is what you did?

7          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

8          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

9          THE COURT:  Let's go on now to Mr. Gonzales.  Thank

10   you.

11          MR. JONES:  Sure.  I hold until in my hand a factual

12   basis for Mr. Nicanor Gonzales which reads as follows:  The

13   above-named defendant Nicanor Gonzales.

14          THE COURT:  What's the problem, Mr. Gonzales?  Are

15   those too tight or what?

16          DEFENDANT GONZALES:  I got a back injury, sir.

17          THE COURT:  Do you want to sit down?

18          DEFENDANT GONZALES:  If you don't mind.

19          THE COURT:  I don't mind at all.  Let's get you a seat

20   and let you sit down.

21          DEFENDANT GONZALES:  Thank you, sir.

22          THE COURT:  Just speak up.

23          DEFENDANT GONZALES:  Yes, sir.

24          MR. WILLIAMS:  Thank you, Judge.

25          MR. JONES:  The above-named defendant,

1   Nicanor Gonzales, has agreed to plead guilty as charged to the

2   one-count Second Superseding Indictment now pending against

3   him.  Should this matter proceed to trial, the United States of

4   America would have proven beyond a reasonable doubt, through

5   the introduction of relevant, competent, and admissible

6   testimonial, physical and demonstrative evidence, the following

7   facts to support the allegation against the Defendant,

8   Nicanor Gonzales.

9              Unless stated otherwise, all the facts set forth

10   herein occurred within the Eastern District of Louisiana.

11              In 2014, a confidential informant advised law

12   enforcement officers of the drug trafficking activities of

13   Edwin Martinez, a high-level cocaine and heroin trafficker from

14   Houston, Texas.

15              DEA Special Agents' investigation revealed and

16   confirmed that Martinez began distributing cocaine in

17   approximately the late 1990s, early 2000s.  Martinez began

18   purchasing multiple kilogram quantities of cocaine and heroin

19   from a number of sources and selling the drugs to a number of

20   distributors in Houston who, in turn, sold multiple kilogram

21   quantities of the cocaine and heroin to customers in the

22   Eastern District of Louisiana and elsewhere with Martinez's

23   knowledge.  Among Martinez's drug trafficking associates was

24   Nicanor Gonzales.

25              Gonzales was the owner of a body shop located at

1   9125 Airport Road in Houston, Texas.  Behind Gonzales' shop was

2   another body shop owned by an individual named Paul Norris.

3   Gonzales and Norris were acquaintances, given that they owned

4   neighboring shops.

5                On October 27th, 2014, Norris, accompanied by a

6   friend of his, herein identified as "Rambo," arrived at

7   Gonzales' house.  Norris informed Gonzales that Rambo wanted to

8   purchase cocaine hydrochloride and asked Gonzales to provide

9   3 kilograms of cocaine hydrochloride to Rambo.  Gonzales agreed

10  to provide the drugs and contacted his source, Martinez.

11  Martinez delivered the 3 kilograms of cocaine hydrochloride to

12  Gonzales at Gonzales' shop.  After receiving the drugs from

13  Martinez, Gonzales contacted Norris to come to the shop and

14  pick up the drugs.  Norris and Rambo arrived at the shop,

15  retrieved the drugs, and left.  Shortly thereafter, Norris

16  returned to Gonzales and informed him that Rambo left with the

17  drugs and never returned with the money to pay for the drugs.

18                After attempting, but failing to locate Rambo,

19  Gonzales and Norris returned to the body shop.  Gonzales

20  contacted Martinez and informed him of the situation.  Martinez

21  arrived at Gonzales' shop, approached Norris, pointed a rifle

22  at Norris and demanded the money for the drugs that he

23  supplied.  Norris then entered Martinez's vehicle at Martinez's

24  direction, and Martinez drove around to Norris' shop.

25                By this point, a Houston Police Department

1    officer had arrived at the scene after having been dispatched

2    to the area regarding a possible kidnapping and armed robbery.

3    When the officer arrived, he observed Martinez driving a 2013

4    Nissan Altima with Norris in the front seat.  In the backseat

5    was an individual herein identified as Z.U.  Driving a black

6    2007 Yukon was Gonzales.  Also at the scene at this point was

7    Norris' nephew, Jason Norris, who called the police.  The

8    officer noticed that Paul Norris appeared frightened.  The

9    officer separated Norris from the other individuals and

10    questioned him.

11            Norris told the officer that he owned a body shop

12    at 9125 Airport Road, Section C15.  According to Norris, as he

13    was closing his shop for the evening, Martinez and Z.U.

14    approached him.  Martinez asked for money that a mutual friend

15    owed him.  Norris told Martinez to leave his shop.  Martinez

16    then threatened to take a race car Norris owned if he did not

17    pay Martinez.  Martinez then pointed an AR rifle at Norris and

18    threatened to kill him.  Norris said that Gonzales attempted to

19    calm Martinez and asked Norris to just give Martinez the race

20    car so that Martinez would not hurt him.  Martinez put the

21    rifle back in his vehicle, pulled a pistol from his pants,

22    pointed it at Norris and ordered Norris to get into his

23    (Martinez's) vehicle.  Norris then called his nephew to bring

24    him the keys to the race car.  Martinez then drove them to the

25    other side of the shop to the race car.  As the officer

1   investigated the scene, he observed an AR rifle in a postal

2   mailbox in the backseat of Martinez's vehicle.  The rifle had a

3   bullet in the chamber.  The officer also observed a

4   silver .45-caliber semiautomatic pistol tucked into Z.U's

5   waistband.  The officer seized the pistol and noticed it was

6   loaded with one in the chamber as well.

7            The officer spoke to Gonzales and noticed that

8   Gonzales was extremely nervous.  When the officer took Gonzales

9   out of his vehicle, he observed on the driver seat floorboard a

10  small plastic bag containing approximately nine grams of

11  cocaine hydrochloride.  He also observed a .380 semiautomatic

12  pistol between the driver's seat and center console.  A records

13  check confirmed that the firearm was stolen.  Officers arrested

14  Martinez, Z.U., and Gonzales.

15           After reviewing the case, the police officers

16  believed that Norris did not tell the whole story and also

17  believed that the matter was drug-related, given the presence

18  of guns and drugs.  An officer contacted Jason Norris for an

19  interview.  Jason Norris met with the officer and told him that

20  Norris' shop was also used for drug trafficking.  The officer

21  then contacted Paul Norris for an interview.  Paul Norris met

22  with the officer and confirmed that the incident was, in fact,

23  drug-related.  Norris told the officers that Gonzales fronted

24  three kilograms of cocaine to his friend on October 27, 2014,

25  at Gonzales' shop, which was located directly behind Norris'

1   shop.  The friend was to return with the money later that day,

2   but failed to do so.  Gonzales contacted his drug source,

3   Martinez, and told him what happened.  Martinez arrived at the

4   shop with Z.U. and threatened Norris, using the aforementioned

5   firearms.  Norris also told the officers that Martinez

6   questioned Norris about the friend's whereabouts, but Norris

7   did not know where he was located.  Martinez then demanded the

8   money or the race car from Norris.  Norris' nephew arrived at

9   the scene, saw what was happening, and called the police.

10  Martinez, Z.U., and Gonzales were arrested.

11          For purposes of sentencing, the government and

12  Gonzales agree and stipulate that Gonzales' conduct and the

13  conduct of his co-defendants, which was reasonably foreseeable

14  to Gonzales, involved at least five kilograms, but less than

15  15 kilograms of cocaine hydrochloride.

16          And at the end of this factual basis are

17  signature lines for Mr. Nicanor Gonzales and his attorney of

18  record, Jason Williams; and myself as the government.

19          Mr. Gonzales --

20          DEFENDANT GONZALES:  Yes, sir.

21          MR. JONES:  -- have you had an opportunity to read and

22  review this four-page factual basis?

23          DEFENDANT GONZALES:  Yes, I have, sir.

24          MR. JONES:  And you heard what I read into the record

25  just now?

1          DEFENDANT GONZALES:  That is correct.

2          MR. JONES:  And is what I read true and accurate?

3          DEFENDANT GONZALES:  Yes, sir.

4          MR. JONES:  And reflects what's in this document?

5          DEFENDANT GONZALES:  That is right, sir.

6          MR. JONES:  And is this your signature on the fourth

7   and final page of the factual basis?

8          DEFENDANT GONZALES:  That is right.

9          MR. JONES:  And Mr. Williams and Mr. Sauzer, have both

10  of you had an opportunity to read and review the factual basis

11  with your client, Nicanor Gonzales?

12         MR. WILLIAMS:  That's correct.

13         MR. JONES:  And Mr. Williams, is this your signature on

14  the fourth and final page as attorney of record for

15  Mr. Gonzales?

16         MR. WILLIAMS:  Yes, it is.

17         MR. JONES:  And, Your Honor, I've signed it on Page 4

18  as well on behalf of the government; and at this time I would

19  offer it into the record.

20         THE COURT:  All right.  Thank you.

21            Mr. Gonzales, do you wish to ask or have your

22  attorney ask the U.S. Attorney any question about the factual

23  basis?

24         DEFENDANT GONZALES:  No.

25         THE COURT:  Have you heard the evidence and facts that

1    detail the charge against you?

2           DEFENDANT GONZALES:  Yes, sir, I have, sir.

3           THE COURT:  Do you understand the government's

4    evidence?

5           DEFENDANT GONZALES:  Yes, sir, I do, sir.

6           THE COURT:  Are the U.S. Attorney's statements correct?

7           DEFENDANT GONZALES:  Yes, sir, Your Honor.

8           THE COURT:  Do you agree that is what you did?

9           DEFENDANT GONZALES:  Yes, sir, Your Honor.

10          THE COURT:  Let me ask each of you:  Do each of you

11   fully understand the charge against you?

12          DEFENDANT GONZALES:  Yes, sir, Your Honor.

13          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

14          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

15          THE COURT:  Do you each fully understand the

16   consequences of your guilty plea?

17          DEFENDANT GONZALES:  Yes, sir, Your Honor.

18          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

19          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

20          THE COURT:  Are you each pleading guilty because

21   you're, in fact, guilty of the crimes charged?

22          DEFENDANT GONZALES:  Yes, sir, Your Honor.

23          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

24          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

25          THE COURT:  Are you pleading guilty because you are, in

1    fact, guilty?

2           DEFENDANT GONZALES:  Yes, sir, Your Honor.

3           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

4           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

5           THE COURT:  Are you pleading guilty voluntarily and of

6    your own free will?

7           DEFENDANT GONZALES:  That's correct, sir.

8           DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

9           DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

10          THE COURT:  Although you've indicated all throughout

11   these proceedings a desire to plead guilty, do each of you

12   understand you still have the right to continue in your

13   not-guilty plea?

14          DEFENDANT GONZALES:  Yes, sir, Your Honor.

15          DEFENDANT HERMELINDA RODRIGUEZ:  Yes, Your Honor.

16          DEFENDANT GABRIEL RODRIGUEZ:  Yes, sir.

17          THE COURT:  All right.  I'll ask you, Mr. Gonzales, how

18   do you wish to plead one last time?

19          DEFENDANT GONZALES:  I plead guilty, sir.

20          THE COURT:  How about you, Mrs. Rodriguez?

21          DEFENDANT HERMELINDA RODRIGUEZ:  I plead guilty,

22   Your Honor.

23          THE COURT:  How about you, Mr. Rodriguez?

24          DEFENDANT GABRIEL RODRIGUEZ:  Guilty.

25          THE COURT:  All right.  Based upon the evidence

1    received, I find there's a factual basis for the guilty pleas

2    in this matter.  Because I find the pleas are knowledgeable,

3    voluntary and have a basis in fact that contains all the

4    elements of the crime charged in the Second Superseding

5    Indictment as to Mr. Gonzales and in the respective Superseding

6    Bills of Information as to Mr. Rodriguez and Mrs. Rodriguez, I

7    accept the guilty pleas as to Count 1 of the respective

8    documents in your case.

9            I therefore adjudge you, Nicanor Gonzales, guilty

10   pursuant to your plea of guilty with respect to Count 1 of the

11   Second Superseding Indictment.

12           I adjudge Gabriel Rodriguez, Sr., guilty pursuant

13   to his plea of guilty with respect to Count 1 of the respective

14   Superseding Bill of Information.

15           And I adjudge Hermelinda Rodriguez guilty

16   pursuant to her plea of guilty with respect to Count 1 of the

17   respective Superseding Bill of Information.

18           I'm going to order a presentence investigation be

19   made.  A presentence report will be prepared by Probation to

20   assist me in sentencing you.  You each will be required to

21   furnish information for the report.  Your attorney may be

22   present when you furnish the information if you wish.  I'm

23   ordering your attorney to cooperate with Probation to schedule

24   a presentence investigation interview between you, your counsel

25   and Probation to occur within two weeks of this date.

1            You and your counsel will be afforded an

2    opportunity to speak on your behalf at sentencing.  You and

3    your counsel will be permitted to read the presentence report

4    before the sentencing and to make objections to it if you have

5    any.

6            I urge each of you to cooperate with Probation in

7    furnishing information for the report because the report will

8    be important in my decision as to what your sentence will be.

9            All right.  What's the sentencing date?

10   THE COURTROOM MANAGER:  Thursday, May 5th at 2:00 P.M.

11   THE COURT:  Does that work for everybody?

12   MR. WILLIAMS:  That's fine, Judge.

13   MR. ST. MARTIN:  Yes sir.

14   MR. THERING:  Yes, Your Honor.

15   THE COURT:  Sorry for keeping y'all so late.  I know

16   that city council especially is used to ending at 5:00, so it's

17   one of those things.

18   MR. ST. MARTIN:  I have a request, Your Honor.

19   THE COURT:  Yes.

20   MR. ST. MARTIN:  Could Ms. Hermelinda Rodriguez be

21   moved from the St. Tammany Parish Prison to be held at the

22   St. Charles Parish jail while this is pending just for sheer

23   convenience for communication purposes because I'm back and

24   forth to St. Charles Parish on a regular basis on a state case

25   here.  If that's possible, it would just be easier.

1    THE COURT:  Of course, it's ultimately up to the

2    Marshal.  I don't have control over that.

3        But is that a possibility?

4    THE MARSHAL:  I'll have to ask the supervisor.  There

5    may be some issues --

6    THE COURT:  Well, check because if they can do it to

7    accommodate Counsel, that would be great.  Will you check on

8    that?

9    THE MARSHAL:  Yes, sir.

10   THE COURT:  Great.  They'll check on that.

11       Anything further, gentlemen?

12   MR. WILLIAMS:  No, Your Honor.

13   MR. THERING:  Nothing, Judge.

14   THE COURT:  Okay.  We're in recess.  Thanks a lot.

15       (WHEREUPON, the proceedings were adjourned.)

16                     *  *  *  *

17              REPORTER'S CERTIFICATE

18       I, Lanie M. Smith, CRR, RPR, Official Court
     Reporter, United States District Court, Eastern District of
19   Louisiana, do hereby certify that the foregoing is a true and
     correct transcript, to the best of my ability and
20   understanding, from the record of the proceedings in the
     above-entitled and numbered matter.

21

22                        ____/s/ Lanie M. Smith_____
                          Official Court Reporter
23

24

25