**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                              **No. 15-68**

**NICANOR GONZALES**                                       **SECTION I**

## ORDER & REASONS

Before the Court is petitioner Nicanor Gonzales' ("Gonzales") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Gonzales' motion is denied.

## I.

On March 19, 2015, Gonzales was charged in a one-count indictment with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine hydrochloride and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[1] A grand jury later returned two superseding indictments including the same charge against additional defendants.[2] On January 21, 2016, Gonzales pleaded guilty to the single count in the second superseding indictment.[3] The factual basis to which Gonzales agreed at the time of his plea established the facts set forth below.[4]

---

[1] R. Doc. No. 1.
[2] R. Doc. Nos. 32, 74.
[3] R. Doc. Nos. 182, 185, 188.
[4] R. Doc. No. 188. Gonzales also incorporates the factual basis into his memorandum in support of his motion. R. Doc. No. 579, at 3–6.

Gonzales was a body shop owner and drug trafficking associate of Edwin Martinez ("Martinez"), a high-level cocaine and heroin trafficker from Houston, Texas. Martinez was known for purchasing multiple kilogram quantities of cocaine and heroin from a number of sources and selling the drugs to a number of distributors in Houston, who, in turn, sold multiple kilogram quantities of the cocaine and heroin in the Eastern District of Louisiana and elsewhere with Martinez's knowledge.

Behind Gonzales' body shop was another body shop owned by Paul Norris ("Norris"). On October 27, 2014, Norris and his friend, Rambo, visited Gonzales' home. Norris told Gonzales that Rambo wanted to purchase cocaine hydrochloride and asked Gonzales to provide Rambo with three kilograms of the drug. Gonzales agreed to provide the drugs and contacted Martinez to procure them. Martinez subsequently delivered the drugs to Gonzales' body shop.

After receiving the drugs from Martinez, Gonzales contacted Norris and Rambo to arrange for a pickup. Norris and Rambo visited Gonzales' body shop, retrieved the drugs, and departed. Shortly thereafter, Norris returned and informed Gonzales that Rambo had left with the drugs without remitting payment for them.

Gonzales contacted Martinez and told him of the situation. Martinez traveled to Gonzales' body shop and confronted Norris. Martinez pointed a gun at Norris and demanded payment for the drugs. Martinez then forced Norris into his vehicle. Around the same time, Houston police were dispatched to the area to respond to reports of a possible kidnapping and armed robbery. Officers arrived and arrested Gonzales and others.

At sentencing, Gonzales and the government stipulated that the drug conspiracy to which Gonzales pleaded guilty involved at least five kilograms but less than fifteen kilograms of cocaine hydrochloride.[5] Gonzales' offense, therefore, carried a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). The United States Probation Office calculated Gonzales' total offense level as being 29 with a criminal history category of VI.[6] This calculation yielded a guideline range of 121 to 151 months.[7] Pursuant to United States Sentencing Guideline § 5K1.1, the government filed a motion for a reduced sentence based on Gonzales' substantial assistance, and it sought a sentence of 85 months.[8]

On April 20, 2017, the Court sentenced Gonzales to a term of imprisonment of 97 months.[9] Gonzales did not appeal his sentence or his conviction. Gonzales filed the instant motion on April 30, 2018.[10] The government does not dispute that Gonzales' motion is timely.[11]

---

[5] Likewise, the revised PSR calculated Gonzales' base offense level using U.S.S.G. § 2D1.1(c)(5) and the fact that Gonzales was responsible for at least 5 but less than 15 kilograms of cocaine hydrochloride. R. Doc. No. 469, at 19.

[6] R. Doc. No. 475.

[7] *Id.*

[8] R. Doc. No. 478.

[9] R. Doc. No. 483.

[10] R. Doc. No. 570.

[11] R. Doc. No. 575 ("Initially, the Government believed that [Gonzales'] motion was time-barred and intended to respond as such. However, subsequent review indicates that [Gonzales] filed his § 2255 motion in a timely manner.").

## II.

### A.

Gonzales asserts several claims of ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a petitioner to prove both deficient performance and resulting prejudice. *Id.* at 687.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). In other words, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

A showing of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in challenging a guilty plea on grounds of ineffective assistance, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 687. A court is not required to address these prongs in any particular order. *Id.* at 697. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

### i.

First, Gonzales argues that his counsel was ineffective in failing to advise him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial.[12] Gonzales states that his counsel "failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive."[13] He further alleges that there was a lack of communication from his counsel that precluded him from effectively participating in his defense.[14]

Gonzales' arguments are refuted by the record. At his re-arraignment, Gonzales was asked by the government whether he recognized the plea agreement in his case; whether he had an opportunity to read and review it; whether he read every single page; whether he reviewed it and discussed it with his attorney; and whether he signed it.[15] Gonzales answered all of the government's questions in the affirmative.[16]

---

[12] R. Doc. No. 579, at 16.
[13] *Id.*
[14] *Id.* at 17.
[15] R. Doc. No. 574.
[16] *Id.* Although the Court need not rely on it, Gonzales' answers are further corroborated by his counsel's affidavit, which states that he did inform Gonzales of the substance of the plea agreement and the likely consequences of pleading guilty

Likewise, the Court engaged in a lengthy colloquy with Gonzales prior to accepting his plea.[17]   Throughout that exchange, Gonzales indicated that he understood the terms of the plea his agreement and that he entered his plea knowingly and voluntarily.   The Court specifically asked Gonzales if there was

---

rather than proceeding to trial. *Owens v. United States*, 551 F.2d 1053, 1053 (5th Cir. 1977) ("Ordinarily, contested fact issues may not be decided on affidavits alone. Where the affidavits are supported by other evidence in the record the court may rely upon them."). Specifically, Gonzales' counsel states: "Based on our initial discussions with Mr. Gonzales and the disclosures made by Mr. Gonzales to myself and the other attorneys of record, it was our opinion and advice that this was a case that would result in a plea because Mr. Gonzales's exposure at trial was too great and the likelihood of Mr. Gonzales being found not guilty at trial was very slim. Therefore, in accordance with conversations had between Mr. Gonzales, the other attorneys of record, and myself, it was my understanding and still is my understanding that Mr. Gonzales was made aware of our opinions regarding the likelihood of winning at trial and agreed with our assessment. Based on that assessment, our actions and strategy focused on challenging assertions made in [the] PSR, negotiating with the U.S. Attorney's Office with the intention of receiving the best plea offer available, petitioning the court to deviate from the mandatory sentence, and other mitigation efforts." R. Doc. No. 591-1, at 5.

The affidavit from Gonzales' counsel further indicates:  "Mr. Gonzales alleges that defense counsel never presented proceeding to trial as an option to him.  This allegation is entirely unfounded.  Proceeding to trial is an option in every case.  Here, the facts and allegations, including Mr. Gonzales's potential exposure, led us to advi[s]e against the option of going to trial.  Factors that contributed to that advice included, but were not limited to, Mr. Gonzales being on the scene when the authorities arrived, the fact that a gun and cocaine were found within the vehicle Mr. Gonzales was driving at the time authorities arrived, Mr. Gonzales' criminal history affecting his credibility in the event he chose to testify in his own defense, and Mr. Gonzales's potential exposure if convicted at trial.  It was and continues to remain my opinion that had Mr. Gonzales[] pr[oceeded] to trial there was a high likelihood that he would be found guilty.  Based on the facts and our assessment of Mr. Gonzales's case, it was our opinion that we should focus our efforts and attention on mitigation and attempting to minimize the amount of time Mr. Gonzales could have been sentenced to." *Id.* at 7.

[17] *See* R. Doc. No. 574.

anything in the plea agreement that he would like the Court to explain to him, and

he indicated that there was not.[18]

The following exchange also occurred:

> **THE COURT**: Now, Mr. Gonzales . . . have each of you
> had sufficient time to discuss with your attorney the facts
> of your case and any possible defenses you may have?
>
> **DEFENDANT GONZALES**: Yes, sir, Your Honor.
>
> . . .
>
> **THE COURT**: Are you each entirely satisfied with the
> advice and services of your counsel?
>
> **DEFENDANT GONZALES**: Yes, sir, Your Honor.[19]

Furthermore, Gonzales has failed to establish prejudice because he has not

"demonstrate[d] that going to trial under the one-count indictment would have given

him a reasonable chance of obtaining a more favorable result." *United States v.

Batamula*, 823 F.3d 237, 240 (5th Cir. 2016). In this regard, "[t]he court's prediction

about whether the defendant had a reasonable chance of obtaining a more favorable

result should be made objectively, without regard for the idiosyncrasies of the

particular decisionmaker." *Id.* (internal quotations omitted).

Gonzales declares that he would have been successful at trial, but he offers

little, if anything, in support of this argument. Had Gonzales proceeded to trial, the

---

[18] *Id.* at 49 ("**THE COURT**: Is there anything in the plea agreement you'd like me to explain to you? **DEFENDANT GONZALES**: No, sir, Your Honor.").

[19] R. Doc. No. 574, at 31–32. The extensive questioning by the government and the Court and Gonzales' answers thereto weigh against a finding of prejudice. *See United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014).

government likely would have called Martinez to testify as to Gonzales' involvement in the conspiracy. At the trial of Gonzales' co-defendants, who were ultimately convicted, Martinez testified that he stored nine kilograms of cocaine in Gonzales' body shop and that Gonzales was involved in the drug transaction involving the sale of three kilograms of cocaine to Rambo, the same transaction that led to Gonzales' arrest.[20]

Interestingly, Gonzales does not dispute that the transaction with Rambo occurred. In fact, throughout his memorandum, he states that he was, indeed, involved in the transaction.[21] Nevertheless, Gonzales insists that he would have been successful at trial. This argument, as the government observes, stems from Gonzales' misunderstanding of conspiracy law.

Gonzales repeatedly states that he would have been successful at trial because he was only involved in the one transaction in Texas and he had no direct connection with the larger conspiracy in Louisiana. Gonzales' argument is misplaced. His role in a drug transaction, in which he readily admits to participating, is precisely what makes him liable for criminal conspiracy. *See United States v. Basey*, 816 F.2d 980, 997 (5th Cir. 1987) ("Well settled is the principle that a party to a continuing

---

[20] R. Doc. No. 536, at 202–210.

[21] *See* R. Doc. No. 579, at 17 ("Gonzales met with Martinez on and about August 2014 until their arrest date for the charges in Houston, Texas . . . The situation with Norris was all Gonzales did with Martinez."); *Id.* at 19 ("Further, the drug transaction that took place in Texas was Gonzales' one-time drug deal gone bad."); *Id.* at 20 ("Gonzales asked [his counsel] to call [the Assistant United States Attorney] to tell him that Gonzales was only guilty of the 3 kilograms of cocaine and nothing else."); *Id.* at 26 ("The situation with Norris in Houston, involving 3 kilograms of cocaine was all Gonzales did with Martinez.").

conspiracy may be responsible for a substantive offense committed by a co-conspirator, even though that party does not participate in the substantive offense or have any knowledge of it. Once the conspiracy and a particular defendant's knowing participation in it has been established beyond a reasonable doubt, the defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners. This principle has been repeatedly applied by this circuit in cases involving drug conspiracies and substantive drug violations.").

Accordingly, Gonzales has not shown that he had a reasonable chance of obtaining a more favorable result at trial.[22] Thus, he has not demonstrated prejudice, and his ineffective assistance of counsel claim fails.

## ii.

Second, Gonzales argues that his counsel was ineffective in failing to file any substantive pretrial motions to "determine the strength of [the government's] case-in-chief."[23] Specifically, Gonzales maintains that his counsel should have filed a motion for discovery and a motion to dismiss for lack of jurisdiction.[24]

---

[22] This is especially true considering that, as discussed herein, had Gonzales proceeded to trial, he likely would have been charged as a multiple offender and, in the event of a conviction, would have been subject to a mandatory minimum sentence of a term of 20 years imprisonment. As part of Gonzales' plea agreement, however, the government agreed not to charge Gonzales as a multiple offender, which reduced the mandatory minimum sentence he faced to a term of 10 years imprisonment.
[23] *Id.* at 21–22.
[24] Gonzales also contends that his counsel should have filed a motion for *Brady* and *Giglio* material, a motion for equal access for purposes of interview, and a request for material pursuant to Rule 404(b) of the Federal Rules of Evidence. *Id.* However, as the government states, "besides simply listing these motions, Gonzales provides no further facts, explanation, or context." R. Doc. No. 591, at 13. The Court, therefore, focuses on Gonzales' arguments regarding the motion for discovery and the motion to

Gonzales alleges that his counsel's "lack of compliance" rendered him "unable to obtain the [d]iscovery that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial."[25] Gonzales, however, does not indicate what specific discovery his counsel should have sought nor what such discovery would have revealed. Gonzales also does not allege that the government actually failed to provide his counsel with discovery materials. As noted by the government, Gonzales articulates no "facts to support his contention that such a motion was necessary or meritorious."[26]

Additionally, at Gonzales' re-arraignment hearing, the Court asked Assistant United States Attorney Andre Jones ("Jones") to describe the government's evidence with respect to Gonzales.[27] Jones then read the factual basis, which stated the evidence that the United States believed it would have proved beyond a reasonable doubt had Gonzales proceeded to trial. Gonzales agreed to the factual basis in the following exchange:

---

dismiss for lack of jurisdiction, which are the only two motions Gonzales discusses at any length.

[25] *Id.* at 23.

[26] R. Doc. No. 591, at 13. Moreover, although the Court need not rely on such statements, it notes that Gonzales' counsel state in sworn affidavits that they met with Gonzales on January 12, 2016 to review discovery provided in relation to his case. R. Doc. No. 591-1. Gonzales' counsel have also provided correspondence, dated November 30, 2015, which indicates that they sent discovery materials to Gonzales in prison. *Id.*

[27] R. Doc. No. 574, at 69–74.

**MR. JONES**: [Mr. Gonzales,] have you had an opportunity to read and review this four-page factual basis?

**DEFENDANT GONZALES**: Yes, I have, sir.

**MR. JONES**: And you heard what I read into the record just now?

**DEFENDANT GONZALES**: That is correct.

**MR. JONES**: And is what I read true and accurate?

**DEFENDANT GONZALES**: Yes, sir.

**MR. JONES**: And reflects what's in this document?

**DEFENDANT GONZALES**: That is right, sir.

. . .

**THE COURT**: . . . Mr. Gonzales, do you wish to ask or have your attorney ask the U.S. Attorney any question about the factual basis?

**DEFENDANT GONZALES**: No.

**THE COURT**: Have you heard the evidence and facts that detail the charge against you?

**DEFENDANT GONZALES**: Yes, sir, I have, sir.

**THE COURT**: Do you understand the government's evidence?

**DEFENDANT GONZALES**: Yes, sir, I do, sir.

**THE COURT**: Are the U.S. Attorney's statements correct?

**DEFENDANT GONZALES**: Yes, sir, Your Honor.

**THE COURT**: Do you agree that is what you did?

**DEFENDANT GONZALES**: Yes, sir, Your Honor.

Thus, Gonzales' contention that he was inadequately informed of the government's evidence and, therefore, unable to make a knowing decision to plead guilty is without merit. Gonzales has not demonstrated prejudice sufficient to justify a finding of ineffective assistance on this claim.

As to Gonzales' contention that his counsel should have filed a motion to dismiss for lack of jurisdiction, the Court understands Gonzales' arguments to pertain to the propriety of venue. Gonzales admits that he was involved in a drug transaction, but he argues that his "sole offense was in Houston, Texas."[28] As a result, he maintains that he "had nothing to do with the conspiracy in Louisiana"[29] and that he, therefore, should not have been prosecuted in this district.

Gonzales misunderstands the law governing venue in criminal conspiracy cases. "A [criminal] defendant does not have a right to be tried in his own home district; trial is proper in any federal judicial district in which venue may lie." *United States v. Spakowski*, 32 F.3d 565, at *8 (5th Cir. 1994). "Unless a statute or [the Federal Rules of Criminal Procedure] permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18.

---

[28] R. Doc. No. 579, at 23.
[29] *Id.*

Because a conspiracy is a continuing offense, it may be prosecuted in any district in which the conspiracy was "begun, continued, or completed." *See* 18 U.S.C. § 3237. Accordingly,

> when an offense is begun in one district and completed in another, venue is proper in any district in which the offense was begun, continued, or completed, and venue is properly based on a preponderance of the evidence showing the commission of any single act that was part of the beginning, continuation, or completion of the crime.

*United States v. Solis*, 299 F.3d 420, 444–45 (5th Cir. 2002) (rejecting a venue challenge in a case involving a conspiracy to distribute heroin).

In this case, Gonzales was part of a conspiracy that involved the transportation of drugs from Houston, Texas to the Eastern District of Louisiana. "[U]nder *Pinkerton* liability, the government need not prove by a preponderance of the evidence that [the defendant] himself transported the drugs . . . but only that he or one of his co-conspirators did so." *Id.* at 445. Further, "venue is not required over all overt acts alleged" against a defendant in an indictment. *Id.* Thus, any motion to dismiss for improper venue would have been without merit,[30] and Gonzales' counsel was not ineffective for failing to file such a motion.

---

[30] Indeed, Gonzales' co-defendant, Norris, did file a motion to transfer venue to the Southern District of Texas, which the Court denied. R. Doc. No. 126.

**iii.**

Third, Gonzales argues that his counsel was ineffective in failing to conduct an adequate and independent pretrial investigation. He offers a host of conclusory allegations, claiming that his counsel failed to research case law, interview witnesses, and develop the facts of his case.

A failure to investigate can support a finding of ineffective assistance. *See Strickland*, 466 U.S. at 691. However, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [proceeding]." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (quotation omitted). Gonzales has made no such specific showing here.

Gonzales does not specify which witnesses his counsel should have interviewed or what facts they failed to discover. Gonzales also does not allege that he would have insisted on going to trial had his counsel conducted further investigation. Gonzales does maintain that there was no evidence linking him to the drug conspiracy to which he pleaded guilty.[31] Yet he then admits to being involved in the conspiracy—namely through the transaction involving Martinez and three kilograms of cocaine that took place in Houston, Texas.

Further, Gonzales' assertion that his counsel failed to adequately investigate his case is contradicted by his own statements made under oath in open court. At Gonzales' re-arraignment, the following exchange occurred:

---

[31] R. Doc. No. 579, at 25–26.

**THE COURT**: Have you had full opportunity to investigate the facts of and the law applicable to the case as well as any possible defenses your clients may have and to advise and counsel with your clients?

[**GONZALES' COUNSEL**]: Yes, Your Honor.

. . .

**THE COURT**: All right. Now, Mr. Gonzales . . . have you [] heard and understood the questions I just directed to your attorney and [his] answer[]?

**DEFENDANT GONZALES**: Yes, sir.

. . .

**THE COURT**: Do [] you have any questions or comments to make concerning any of those questions or your attorney's answers or other statements made by your counsel?

**DEFENDANT GONZALES**: No, sir.
. . .

**THE COURT**: All right. Now, in connection with the defense of your case, did your counsel fail to investigate or follow up on anything that you requested that he investigate or follow up on, which would include but not be limited to the interviewing of witnesses and/or the locating and review of documents?

**DEFENDANT GONZALES**: No, sir, Your Honor.[32]

Thus, Gonzales has failed to make the required showing of deficient performance or prejudice, and he cannot prevail on his ineffective assistance claim with regard to his counsel's pre-trial investigation efforts.

---

[32] R. Doc. No. 574, at 54–55.

**iv.**

Fourth, Gonzales argues that his counsel was ineffective in failing to attempt to negotiate a favorable plea agreement. This assertion finds no support in the record. To the contrary, it is clear that Gonzales' counsel negotiated a plea agreement that was highly favorable to him, particularly considering the crime with which Gonzales was charged and his criminal history.

Under the terms of Gonzales' plea agreement, the government agreed not to charge him as a multiple offender.[33] Had Gonzales proceeded to trial, he presumably would have been charged as a multiple offender, in which case he would have faced a mandatory minimum sentence of 20 years imprisonment and a possible maximum sentence of life imprisonment. Because Gonzales was not charged as a multiple offender, however, he faced a significantly lower mandatory minimum sentence of 10 years imprisonment.[34]

Additionally, Gonzales' plea agreement required the government to bring to the Court's attention any cooperation provided by Gonzales. It further explained that the government could elect to file a motion to request a sentence below the sentence contemplated by the guidelines. Gonzales cooperated with the government, and the government filed such a motion, recommending a reduced sentence of 85 months.

---

[33] R. Doc. No. 185, at 1.

[34] The Court informed Gonzales as to the favorable nature of his plea agreement at sentencing. R. Doc. No. 577, at 10. ("**THE COURT**: Honestly, I'm sure you know this from reading the presentence report, you weren't charged as a multiple offender. You had a considerable break in the beginning, and if you hadn't pled guilty and had you been convicted, you would be looking at 20 to life. **THE DEFENDANT**: Yes, sir, Your Honor. I understand.").

In light of Gonzales' plea agreement and the government's motion, the Court sentenced Gonzales to a term of imprisonment below the guidelines range.

Other than his own bald assertions, Gonzales offers no evidence to suggest that the government would have offered a plea agreement more favorable than the generous one he received. Likewise, Gonzales' insistence that he would have fared better by proceeding to trial is wholly speculative and conclusory. *Green v. Johnson*, 160 F.3d 1029, 142 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *see also United States v. Cooley*, No. 07-352, 2012 WL 5348860, at *5 (E.D. La. Oct. 29, 2012) (Englehardt, J.) ("It is notable that Cooley did not seek to withdraw his plea and proceed to trial prior to sentencing. Nor does he now profess to be actually innocent of the offenses to which he pled guilty. In any event, [it] is not reasonable to assume, for a number of reasons, that a sentence imposed following trial would be less onerous than that imposed, or that the Government would have offered (and the Court accepted) a more favorable plea agreement, if Cooley had rejected the plea agreement now at issue here.").

Gonzales has not established deficient performance or resulting prejudice with respect to his counsel's alleged failure to negotiate a favorable plea agreement. His ineffective assistance claim, therefore, fails in this regard.

**v.**

Fifth, Gonzales argues that his counsel was ineffective in failing to review, discuss, and explain the presentence report ("PSR") to him. In particular, Gonzales claims that he was improperly advised that two of his prior convictions would not affect his sentence.[35]

As the government notes, Gonzales' claims are contradictory. On the one hand, he states that his counsel failed to go over the PSR with him prior to sentencing. On the other, he claims that his counsel incorrectly informed him that some of his previous convictions would not be counted against him during sentencing.

Further, Gonzales' assertions are belied by statements made at his sentencing hearing. At that time, the Court inquired as to whether Gonzales and his counsel had an opportunity to read the presentence report. Gonzales' counsel answered in the affirmative.[36] The Court also asked whether there were any additions, corrections, modifications, deletions, objections, or anything similar that either Gonzales or his counsel wanted to make. Gonzales' counsel indicated that there were none beyond what had already been filed.[37] With respect to each such inquiry by the Court, Gonzales remained silent, and he did not contradict the answers provided by his counsel.

---

[35] R. Doc. No. 579, at 36.
[36] R. Doc. No. 577, at 2–3.
[37] *Id.*

Additionally, the Court entered into the following exchange with Gonzales regarding his previously expressed desire to replace his counsel:

> **THE COURT**: All right. Tell me, Mr. Gonzales, what's your position at this point with respect to counsel?
>
> **THE DEFENDANT**: Your Honor, I wrote the lawyers back and asked them to disregard the letter because I actually seen something that was going on, but I didn't know at the beginning that was the way it was, you know what I'm saying, about the presentence report, but I want to disregard and keep my lawyers, if that's okay with you.
>
> **THE COURT**: So you want counsel to continue to represent you –
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: – is that what you're saying?
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: Do you want to speak to an independent lawyer about that before you make that decision?
>
> **THE DEFENDANT**: No, sir, Your Honor.
>
> **THE COURT**: Do you understand, making that decision, you won't be able to come back and complain later on that he represented you at sentencing –
>
> **THE DEFENDANT**: Yes, sir.
>
> **THE COURT**: – do you understand that?
>
> **THE DEFENDANT**: I do understand that, sir.
>
> **THE COURT**: So you waive your right to make that argument?
>
> **THE DEFENDANT**: Yes, sir.[38]

---

[38] R. Doc. No. 577, at 4–5.

Additionally, the Court need not rely on, but notes the affidavits filed by Gonzales' counsel, which indicate that they visited Gonzales on two separate occasions to review the PSR and the revised PSR and that they sent Gonzales several pieces of correspondence regarding the PSR prior to sentencing.[39] Furthermore, as discussed herein, Gonzales asserts in his memorandum that the four objections that were raised to the PSR were his own, which suggests that Gonzales was, in fact, aware of the PSR and its contents. Thus, the Court rejects Gonzales' claim that he was not made familiar with the PSR prior to sentencing.

Gonzales also avers that he was "advised that his prior convictions in Harris County, Texas, Docket Nos. 0898323 and 0951500 were not to be used to enhance his sentence, however, the [p]robation [o]fficer used those to enhance Gonzales' sentence."[40] Even assuming that Gonzales' counsel misinformed him in this way, Gonzales offers no argument—meritorious or otherwise—as to why the prior convictions at issue should not have been counted in the calculation of his criminal history category. Regardless, he received a downward departure. Gonzales, therefore, has not shown that he was prejudiced by any erroneous explanation or failure to object on the part of his counsel.

---

[39] R. Doc. No. 591-1, at 3–4, 12, 18, 20, 22; R. Doc. No. 591-2, at 1–2.
[40] R. Doc. No. 579, at 36.

## vi.

Sixth, Gonzales argues that his counsel was ineffective in failing to file substantive objections to the PSR. This allegation is simply false. Gonzales' counsel filed four objections to the PSR.[41] The probation officer that drafted the PSR initially rejected all of Gonzales' arguments, but the officer later filed an addendum to the PSR concluding that Gonzales' objections were correct, that he should not have been categorized as a career offender, and that his theft conviction should not have been counted toward his criminal history score. The government agreed with the conclusions of the probation officer, and the PSR was amended to reflect the changes urged by three of Gonzales' four objections. The Court overruled the fourth objection.[42]

Gonzales acknowledges that the four objections were filed but argues that the objections were his own idea. However, the source of the objections is irrelevant. As clearly demonstrated by the record, Gonzales' counsel filed several objections to the PSR, three of which were found to have merit. Further, Gonzales does not specify what other objections, if any, his counsel could or should have raised. Thus, Gonzales cannot show that his counsel's performance was deficient or that he was prejudiced by their nonexistent failure to file objections to the PSR.

---

[41] R. Doc. No. 469, at 30–32.
[42] R. Doc. No. 482.

## vii.

Seventh, Gonzales argues that his counsel was ineffective in failing to argue for mitigation of punishment, failing to file a "motion for disparity of sentence," and failing to object to Gonzales' sentence as being substantively unreasonable. These arguments are flatly contradicted by the record. Gonzales' counsel did, in fact, file a motion for a downward variance and a substantial memorandum in support of that motion.[43] Additionally, any objection to Gonzales' ultimate sentence as being substantively unreasonable would have been futile, as Gonzales was sentenced to a term of imprisonment *below* the sentencing guideline range. *See United States v. Broussard*, 882 F.3d 104, 113 (5th Cir. 2018) ("A sentence below the Guidelines range is presumptively reasonable . . . . This presumption is not overcome just by showing a disparity between the sentences received by co-defendants."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear [that] counsel is not required to make futile motions or objections."). Hence, Gonzales cannot establish deficient performance or prejudice on these grounds.

## viii.

Eighth, Gonzales argues that his counsel was ineffective in failing to file a notice of appeal on his behalf.[44] Gonzales contends that his counsel "never mentioned that an appeal was the proper avenue in further challenging [] objections to the PSR."[45]

---

[43] R. Doc. Nos. 464, 464-1.
[44] R. Doc. No. 579, at 38.
[45] *Id.*

"[T]he failure to file a requested [notice of appeal] is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit." *United States v. Tapp*, 491 F.3d 263, 265 (5th Cir. 2007); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). Nowhere in his petition, however, does Gonzales allege that he requested his counsel file a notice of appeal and that his counsel refused to honor such a request. To the contrary, the record indicates that Gonzales was informed of his appellate rights and declined to exercise them. At Gonzales' sentencing hearing, the Court entered into the following exchange with Gonzales.

> **The Court**: You have a right to appeal your conviction as well as your sentence. If you cannot afford the cost of an appeal, those costs will be paid by the United States . . . So that being the case, do you wish counsel to file a notice of appeal on your behalf?

> **The Defendant**: No, sir, Your Honor.[46]

Thus, Gonzales' argument that his counsel was ineffective for failing to file a notice of appeal is meritless.

### ix.

Finally, Gonzales argues that his counsel should have recused themselves from his case due to a conflict of interest arising from an alleged friendship with Drug Enforcement Administration Agent Chad Scott ("Scott").[47] This argument appears to

---

[46] R. Doc. No. 577, at 13–14.
[47] R. Doc. No. 579, at 35.

be completely unfounded, as Gonzales offers no facts that suggest his counsel had any relationship whatsoever with Scott.[48]

Regardless, Gonzales' contentions are unavailing. Even assuming that both of Gonzales' counsel had a relationship with Scott, Gonzales has offered nothing at all to show that such a relationship either rendered his counsel's performance deficient or prejudiced him in any way. Gonzales' claim, thus, fails under *Strickland*.[49]

---

[48] One of Gonzales' attorneys notes in his affidavit that Gonzales' case was the first case he handled in which Scott was involved in an investigation and that the first and only time he met Scott was following Gonzales' debrief at the United States Attorney's Office in New Orleans. R. Doc. No. 591-1, at 8. Gonzales' other attorney states in her affidavit that prior to working on Gonzales' case, she had worked on one other matter in which Scott was an agent; that she has no outside connection to Scott; that she has never communicated with Scott other than as a professional working on another matter; and that she had no contact with Scott with respect to Gonzales' case. R. Doc. No. 591-2, at 6.

[49] The Court acknowledges that certain conflict of interest claims are analyzed under the framework set forth in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which focuses on "(1) whether there was an actual conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). However, the application of this framework appears limited to alleged conflicts of interest in cases involving an attorney's representation of multiple defendants. *See United States v. Goodley*, 183 Fed. App'x 419, 422 (5th Cir. 2006) ("This court has determined that not all conflicts of interest are suited to *Cuyler v. Sullivan's* stringent rule and that *Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client . . . . Recent instruction from the Supreme Court and the recent decisions of this court have reaffirmed the strict limitation of *Sullivan* to cases involving multiple representation and the application of *Strickland* to most other alleged conflicts.") (internal quotations and alterations omitted); *see also United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002) (noting that the *Cuyler* standard "is confined to claims . . . that challenge an attorney's divided loyalties due to multiple representation" and stating that "*Strickland's* two-pronged analysis, including its requirement of a showing of prejudice, governs all other attorney-client conflicts, their range being virtually limitless."). The Court, therefore, applies *Strickland* to Gonzales' conflict of interest claim.

**III**.

Gonzales has not demonstrated that his counsel's performance was deficient and/or that he was prejudiced as a result. Accordingly,

**IT IS ORDERED** that Gonzales motion is **DENIED** and that his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, July 20, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**